**TRELLTEX, INC. d/b/a Texcel, Appellant/Cross–Appellee**

v.

**INTECX, L.L.C. d/b/a Rocky Mountain Industrial Technologies, Appellee/Cross–Appellant**

**NO. 14–14–00578–CV**

Court of Appeals of Texas, Houston (14th Dist.).

Majority and Dissenting Opinions filed March 15, 2016

Rehearing and Rehearing En Banc Overruled June 7, 2016

---

J.W. Beverly, Keith Remels, Stephanie Hamm, Houston, TX, for Appellant.

Howard R. King, Kingwood, TX, for Appellee.

Panel consists of Chief Justice Frost and Justices Jamison and Busby.

## OPINION

J. Brett Busby, Justice

Appellant Trelltex, Inc. d/b/a Texcel (Texcel) appeals from a judgment awarding appellee and cross-appellant Intecx, L.L.C. d/b/a Rocky Mountain Industrial Technologies (RMIT) $21,589.88 in damages for underpaid commissions occurring between October 1, 2001 and May 1, 2006, $43,179.76 in treble damages under Colorado law, and $76,235.10 in reasonable attorney's fees and court costs. On appeal, Texcel argues that the trial court erred in awarding damages for underpaid commissions between October 1, 2001 and May 1, 2006 because any such damages are barred by the four-year statute of limitations applicable to breach of contract claims. We conclude that the damages awarded by the trial court are barred by the statute of limitations and therefore reverse and render judgment that RMIT take nothing on these claims. Because we do so, we also reverse the trial court's award of treble damages under Colorado law and the trial court's award of attorney's fees and court costs.

In a single issue on cross-appeal, RMIT contends that the trial court erred in concluding that it waived its right to damages from underpaid commissions occurring after May 1, 2006. We hold RMIT waived its right to any damages not barred by the statute of limitations. We therefore affirm the portion of the trial court's judgment denying any relief not granted.

### BACKGROUND

In August 2001, Texcel entered into a Sales Representative Agreement with RMIT. In pertinent part, the agreement provided: "The commission rate is 9% for all sales, existing and new sales." The agreement went on to state:

NOTE: This commission structure has been designed for the benefit of both parties. It is understood that this rate will be evaluated after some time and possibly adjusted as necessary to allow a greater territory expansion for RMIT as warranted and or a different commission rate.

. . .

From time to time a specific order may suggest a mutually agreed upon commission rate. This will be discussed and agreed upon at the time of quotation.

In a section entitled Revisions, the agreement stated: "Any revisions to this agreement must be done in writing and accepted by both parties."

In October 2001, Texcel lowered the commission rate to five percent. The trial court found that the reduction was without RMIT's knowledge or agreement. The parties operated under the agreement until Texcel terminated the agreement. The termination went into effect on February 29, 2012. The parties do not dispute that from October 1, 2001 until the agreement was terminated, Texcel paid RMIT a five-percent commission on all sales.

On September 10, 2012, RMIT filed suit against Texcel to collect the underpaid commissions. RMIT asserted that Texcel breached the contract by paying commissions at five percent between January 2008 and February 2012 when the contract called for nine percent. RMIT also asserted a violation of a Colorado statute which allowed it collect treble damages on the underpaid commissions.

In its answer, Texcel asserted numerous affirmative defenses, including that RMIT's claims had been waived and were barred by the statute of limitations. Texcel also filed a counterclaim seeking a declaratory judgment that the agreement did not require it to obtain written approval from RMIT to change the commission rate

or expand RMIT's territory. Notwithstanding the sales agreement's revisions section, which required any revisions to be in writing and accepted by both parties, Texcel asserted that the provision entitled "Note" allowed it to adjust the commission rate unilaterally. Alternatively, Texcel sought a declaratory judgment that the parties had modified the agreement orally.

Following a bench trial, the trial court rendered judgment in favor of RMIT. The court awarded $21,589.88 for underpaid commissions from October 1, 2001 to May 1, 2006 and $43,179.76 in additional damages under the Colorado statute. It also awarded RMIT $76,235.10 in reasonable attorneys' fees and court costs. Subsequently, the trial court signed findings of fact and conclusions of law. Texcel filed a notice of appeal, and RMIT filed a notice of cross-appeal.

## ANALYSIS

### I. The damages awarded by the trial court for commissions underpaid from October 1, 2001 to May 1, 2006 are barred by limitations.

■ In its first issue, Texcel argues that the trial court erred in awarding damages for alleged underpayments occurring between October 1, 2001 and May 1, 2006 because any such damages are barred by the statute of limitations. We begin our analysis by considering whether Texcel preserved this issue for our review.

■ Limitations is an affirmative defense that must be specifically pleaded and proved. *Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 845 (Tex.App.–Houston [1st Dist.] 1984, writ ref'd n.r.e.). In addition, a party asserting an affirmative defense in a bench trial must request findings in support of that defense in order to avoid waiver on appeal. *Sears, Roebuck & Co. v. Nichols*, 819 S.W.2d 900, 907 (Tex.App.–

Houston [14th Dist.] 1991, writ denied). When the trial court makes findings that do not establish any element of a defense, the party relying upon that defense must file a request for additional findings to avoid waiver of that defense on appeal. *Id.*

In this case, Texcel's pleadings raised the statute of limitations repeatedly as an affirmative defense. Texcel also requested findings of fact and conclusions of law, which the trial court issued. In finding of fact 6, the trial court concluded Texcel underpaid commissions from October 2001 until February 2012. In finding of fact nine, the trial court included a chart in which it calculated the amount of commissions that Texcel owed but did not pay RMIT in each year from 2001 until 2012. In conclusion of law three, the trial court concluded that these underpayments breached the parties' contract. Because the trial court concluded that RMIT had waived its right to receive underpaid commissions owed after May 1, 2006, it awarded RMIT damages for the underpaid commissions only from October 1, 2001 to May 1, 2006. In conclusion of law eleven, the trial court concluded that Texcel "failed to prove any of its alleged affirmative defenses other than waiver." No motion for new trial, objection to the trial court's findings of fact or conclusions of law, or request for additional or amended findings or conclusions appear in our record, and the parties do not argue that any was made.

The trial court's findings establish elements of Texcel's limitations defense by charting when the underpayments occurred. No party has contended that any other disputed facts needed to be resolved in order to determine whether RMIT's claims for breach of contract regarding those underpayments were barred by limitations. For these reasons, no request for additional findings was necessary to pre-

serve Texcel's limitations issue for appellate review. *See Sears, Roebuck & Co.*, 819 S.W.2d at 907–08 (holding defense of plaintiff's negligence was not waived by defendant's failure to request negligence finding because trial court had included adverse finding on element of proximate cause); *see also Limbaugh v. Limbaugh*, 71 S.W.3d 1, 7 (Tex.App.–Waco 2002, no pet.) (explaining findings are required only when material factual disputes impact ultimate or controlling issues); *Howard P. Foley Co. v. Cox*, 679 S.W.2d 58, (Tex.App.–Houston [14th Dist.] 1984, no writ) ("The trial court is not required to make findings of fact as to undisputed facts."). Nor was it necessary for Texcel to take exception to the trial court's adverse conclusion of law that Texcel had failed to prove its defense in order to challenge that conclusion on appeal. *See* Tex.R.App. P. 33.1(c); *Sears, Roebuck & Co.*, 819 S.W.2d at 903 ("Conclusions of law are always reviewable by an appellate court."); *see also Sammons v. Elder*, 940 S.W.2d 276, 280 (Tex.App.–Waco 1997, writ denied); *W. Wendell Hall et. al., Hall's Standards of Review in Texas*, 42 St. Mary's L.J. 3, 243 (2010).[1]

■ Having concluded that Texcel preserved the limitations issue for our review, we next analyze whether, in light of the trial court's unchallenged findings about when the underpayments occurred, the trial court's legal conclusion that Texcel failed to prove its defense is erroneous. The statute of limitations for breach-of-contract actions is four years from the date of accrual. Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (West 2015). An action for breach of contract accrues immediately upon breach. *Barker v. Eckman*, 213 S.W.3d 306, 311 (Tex.2006). "A party breaches a contract by failing to perform when that party's performance is due." *E.P. Towne Ctr. Partners, L.P. v. Chopsticks, Inc.*, 242 S.W.3d 117, 123 (Tex.App.–El Paso 2007, no pet.).

■ If the parties' agreement contemplates a continuing contract for performance, the limitations period usually does not commence until the contract is fully performed. *Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 845 (Tex.App.–Houston [1st Dist.] 1984, writ ref'd n.r.e.). When the terms of an agreement call for fixed, periodic payments, however, a separate cause of action arises for each missed payment. *Slusser v. Union Bankers Ins. Co.*, 72 S.W.3d 713, 717 (Tex.App.–Eastland 2002, no pet.). "Thus, a suit for the breach of a contract requiring payment in

---

1. *But see Dunn v. Dunn*, 177 S.W.3d 393, 398–99 (Tex.App.–Houston [1st Dist.] 2005, pet. denied) ("We hold that by failing to object to the trial court's evidentiary requirements and by failing to object to the trial court's findings of fact and conclusions of law, Sherry has waived any error and presents nothing for our review in regard to her first issue."). We are aware of the statement in our decision in *Regan v. Lee* regarding the need for a request or objection in order to challenge a conclusion of law on appeal. 879 S.W.2d 133, 136 (Tex.App.–Houston [14th Dist.] 1994, no writ). But *Regan* was not decided under the current rules of appellate procedure, and in any event the *Regan* panel could not overrule our prior decision in *Sears, Roebuck & Co.*, which we are bound to follow.

*See Garza v. Cantu*, 431 S.W.3d 96, 109 n. 10 (Tex.App.–Houston [14th Dist.] 2013, pet. denied) (concluding that if a panel of this Court does not distinguish or purport to apply a prior panel holding that is on point, a third panel of this Court is bound by the holding of the first panel rather than the second panel); *Glassman v. Goodfriend*, 347 S.W.3d 772, 781 (Tex.App.–Houston [14th Dist.] 2011, pet. denied) (en banc) (explaining that under principles of horizontal stare decisis, a panel of this Court is bound by a prior holding of another panel of this Court absent either a decision from a higher court or this Court sitting en banc that is on point and contrary to the prior panel holding or an intervening and material statutory change).

periodic installments may include all payments due within the four-year statute of limitations period, even if the initial breach was beyond the limitations period. Recovery of any payment more than four years overdue is barred." *Spin Doctor Golf, Inc. v. Paymentech, L.P.*, 296 S.W.3d 354, 362 (Tex.App.–Dallas 2009, pet. struck). Whether a claim is barred by the statute of limitations is a legal question we review de novo. *Hunt Oil Co. v. Live Oak Energy, Inc.*, 313 S.W.3d 384, 387 (Tex.App.–Dallas 2009, pet. denied).

Texcel contends that because RMIT filed suit on September 10, 2012, it cannot recover any purported underpayments that occurred before September 10, 2008.[2] The sales agreement provided that payments were due on a monthly basis: "Commission checks are paid on the last day of the following month in which the commissions were earned." Accordingly, a breach occurred and a cause of action arose for each underpayment occurring between October 1, 2001 and May 1, 2006. *See Slusser*, 72 S.W.3d at 717. The trial court erred by awarding damages for underpaid commissions occurring during this time frame because recovery of any such underpayments was barred by the four-year statute of limitations. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.051.

RMIT argues that the agreement between the parties was a continuing contract and thus the limitations period did not commence until Texcel terminated the agreement in 2012. This argument misses the mark for the reasons explained in *Davis Apparel v. Gale–Sobel, a Division of Angelica Corp.*, 117 S.W.3d 15 (Tex.App.–Eastland 2003, no pet.). In *Davis Appar-*

el, Gale–Sobel paid Davis Apparel a fifteen-percent commission rate from 1994 to 1997. *Id.* at 17. Believing it was entitled to receive a commission of twenty percent, Davis Apparel filed suit against Gale–Sobel to recover the underpaid commissions on December 1, 2000. *Id.* Gale–Sobel argued that it never agreed to pay a twenty-percent commission rate and also raised the statute of limitations as an affirmative defense. *Id.* The jury found that Gale–Sobel agreed to pay Davis Apparel a twenty-percent commission and awarded damages in the amount of $28,467.68. *Id.* But the jury also found that the earliest date Gale–Sobel failed to comply with the agreement was March 4, 1994. *Id.* Based on this finding, the trial court rendered a take-nothing judgment against Davis Apparel, concluding all damages were barred by the statute of limitations. *Id.*

On appeal, Davis Apparel argued that the agreement was a continuing contract that was not breached until it expired in May 1997. *Id.* at 18. The Eastland Court of Appeals took a different view, concluding that the evidence supported the jury's finding that the first breach occurred in March 1994. *Id.* The court of appeals therefore affirmed the trial court's take-nothing judgment with regard to claims arising more than four years before suit was filed (before December 1, 1996), but reversed the judgment for claims arising after that date and remanded those claims for trial. *Id.* at 19. The court of appeals explained:

[I]rrespective of the jury's determination of when the earliest breach of the contract occurred, limitations should not

---

**2.** RMIT's fourth amended petition alleges that it was underpaid $110,899.31 from 2008 to 2012. In the section titled Damages, RMIT asserts only that it is entitled to this amount in damages as a result of Texcel's breach. RMIT's petition does not discuss the damages

it suffered from any breaches occurring between October 1, 2001 and May 1, 2006. Texcel does not argue on appeal, however, that the trial court erred by awarding relief not requested in RMIT's petition. We therefore do not address that issue.

bar claims for damages arising after December 1, 1996. The evidence in the record demonstrates that the parties treated their agreement as an installment contract whereby Gale–Sobel made monthly payments of commissions to Davis Apparel. As we noted in *Slusser*, a separate cause of action arises for each missed payment under an installment contract.

*Id.*

As in *Davis Apparel*, the agreement in this case required periodic commission payments, and recovery for any underpayments occurring more than four years before RMIT filed suit is therefore barred by the statute of limitations. During oral argument, RMIT asserted that the payments Texcel was required to make under the agreement were not fixed because they were based on commissions that varied from month to month. Although the payments varied in amount, they were fixed in that the agreement required them to be made using a specified formula on particular dates. The commission payments also varied in amount in *Davis Apparel*, yet the court concluded that payments missed outside the four-year limitations period were barred. 117 S.W.3d at 18.[3] *See also Spin Doctor Golf, Inc.*, 296 S.W.3d at 362–63

(collecting and discussing cases applying the breach-of-contract accrual rule to payments calculated and due on a periodic basis, and holding that claims for failures to make payments within four years before suit were not barred by limitations but that the claim for initial breach, which occurred outside that period, was barred).

For these reasons, we sustain Texcel's first issue. We therefore reverse the trial court's award of $21,589.88 in damages to RMIT for any underpaid commissions occurring between October 1, 2001 and May 1, 2006. As a result, we also reverse the trial court's award of $43,179.76 in additional damages for underpaid commissions under Colorado law. We likewise reverse the trial's award of $76,235.10 in reasonable attorneys' fees and court costs because RMIT is no longer a prevailing party on its breach of contract claim and has not recovered damages. *See Ashford Partners, Ltd. v. ECO Res., Inc.*, 401 S.W.3d 35, 40 (Tex.2012) ("[W]e have said that to qualify for fees under the statute, a litigant must prevail on a breach of contract claim and recover damages"); *see also* Tex. Civ. Prac. & Rem.Code Ann. § 38.001 (West 2015). We render judgment that RMIT take nothing on these claims.[4]

---

3. RMIT also contends that *Davis Apparel* is distinguishable because the parties in that case did not sign a contract specifying the commission percentage, and after a dispute arose during the first three months of the agreement, Davis Apparel made several demands for the underpaid commissions. 117 S.W.3d at 17. RMIT asserts that it never made a demand for payment in this case until after the contract was terminated. The court in *Davis Apparel* did not rely on the facts RMIT highlights in concluding that the underpaid commissions were barred by the statute of limitations, however. Instead, as noted above, the court held that a separate cause of action arose for each underpayment. *Id.* at 19.

4. Texcel contends in its second issue that the trial court erred by finding that Texcel breached the agreement and by denying its counterclaim for declaratory relief. Given our holding above that limitations bars the damages awarded to RMIT for any breach of the agreement by underpaying commissions before May 1, 2006, as well as our holding below that RMIT waived its claim to underpaid commissions not barred by limitations, we need not address Texcel's second issue. In its third issue, Texcel asserts that the trial court erred in awarding additional damages under Colorado law. In its fourth issue, Texcel contends the trial court erred by awarding attorneys' fees because the claims for the damages awarded by the trial court were never presented. Having reversed the trial

## II. The trial court did not err in concluding that RMIT waived its right to commissions underpaid from September 2008 to February 2012.

In its sole issue on cross-appeal, RMIT argues "there is no evidence or insufficient evidence" that it waived by implication its right to receive any commissions not paid between May 1, 2006 and February 29, 2012. RMIT asks us to reverse the trial court's conclusion of law that Texcel proved waiver and to render judgment in its favor for $128,153.27 in commissions underpaid during that period. RMIT also asks us to reverse the trial court's factual findings that RMIT received monthly statements from Texcel after May 1, 2006 from which it could have calculated that it was being paid only five-percent commissions, and that RMIT never complained about the underpaid commissions before the agreement was terminated. As explained below, however, RMIT's brief does not demonstrate that the evidence is insufficient to support these findings. Instead, RMIT largely argues that these findings are insufficient to support the legal conclusion that an implied waiver occurred. We focus our analysis on that question.

The sales agreement calls for commissions to be paid on the last day of the month following that in which the commissions were earned. Because RMIT filed suit on September 10, 2012, any underpaid commissions due from May 1, 2006 through August 31, 2008 are barred by the four-year statute of limitations, as discussed above.[5] We therefore address only whether the trial court erred in concluding that RMIT waived by implication its right to recover any underpaid commissions due between September 2008 and the agreement's termination in February 2012.[6]

### A. Standard of review

When, as in this case, specific findings of fact and conclusions of law are filed and a reporter's record is before the appellate court, the findings will be sustained if there is evidence to support them, and the appellate court will review the legal conclusions drawn from the facts found to determine their correctness. *G.D. Holdings, Inc. v. H.D.H. Land & Timber, L.P.*, 407 S.W.3d 856, 859 (Tex.App.–Tyler 2013, no pet.). Findings of fact have the same force and dignity as a jury's verdict and are reviewable under the same standards of legal and factual sufficiency. *Foley v. Capital One Bank, N.A.*, 383 S.W.3d 644, 646 (Tex.App.–Houston [14th Dist.] 2012, no pet.).

Texcel bore the burden to prove its affirmative defense of waiver. Accordingly, we review RMIT's legal sufficiency challenge under a "no evidence" standard. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex.2005). A no-evidence challenge will be sustained when (a) there is a com-

---

court's award of additional damages under Colorado law and the trial court's award of attorneys' fees and court costs due to our holding on the statute of limitations, we need not address these issues.

5. Any sales commissions earned during August 2008 were not due until September 30, 2008. These sales commissions were therefore not barred by the four-year statute of limitations.

6. Given the payment schedule in the sales agreement, any commissions earned on sales

during February 2012 were not due until March 31, 2012. In finding of fact 6, the trial court found Texcel underpaid commissions until the contract was terminated "effective February 29, 2012." The parties have not addressed this one-month discrepancy in their briefs. In any event, we need not resolve the matter because we conclude RMIT waived its right to any damages stemming from the alleged underpaid commissions that occurred during the four-year limitations period.

plete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Serv. Corp. Intern. v. Guerra,* 348 S.W.3d 221, 228 (Tex.2011).

We review a trial court's conclusions of law de novo. *State v. Heal,* 917 S.W.2d 6, 9 (Tex.1996); *Potcinske v. McDonald Prop. Inv., Ltd.,* 245 S.W.3d 526, 529 (Tex. App.–Houston [1st Dist.] 2007, no pet.). When performing a de novo review, we exercise our own judgment and redetermine each legal issue. *Sembera v. Petrofac Tyler, Inc.,* 253 S.W.3d 815, 822 (Tex. App.–Tyler 2008, pet. denied). To make this determination, we consider whether the conclusions are correct based on the facts from which they are drawn. *Potcinske,* 245 S.W.3d at 529.

In reviewing the factual sufficiency of the evidence, we must examine the entire record, considering both the evidence in favor of, and contrary to, the challenged findings. *See Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406–07 (Tex.1998); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986). When a party challenges the factual sufficiency of the evidence supporting a finding for which it did not have the burden of proof, we may set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Ellis,* 971 S.W.2d at 407; *Barnhart v. Morales,* 459 S.W.3d 733, 745 (Tex.App.–Houston [14th Dist.] 2015, no pet.). The amount of evidence necessary to affirm is far less than the amount necessary to reverse a judgment. *Barnhart,* 459 S.W.3d at 745. This Court is not a fact-finder. *Id.* (citing *Ellis,* 971 S.W.2d at 407). Instead, the jury is the sole judge of the credibility of the wit-

nesses and the weight to be given their testimony. *Id.* We may not, therefore, pass upon the witnesses' credibility or substitute our judgment for that of the jury, even if the evidence would also support a different result. *Id.* If we determine the evidence is factually insufficient, we must detail the evidence relevant to the issue and state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict; we need not do so when affirming a jury's verdict. *Id.* (citing *Gonzalez v. McAllen Med. Ctr., Inc.,* 195 S.W.3d 680, 681 (Tex.2006) (per curiam)).

**B.   Applicable law**

■■■■■ Waiver may be asserted as an affirmative defense against a party who intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right. *Singleton v. Elliott,* 14–13–00040–CV, 2014 WL 1922260, at *4 (Tex.App.–Houston [14th Dist.] May 13, 2014, no pet.). The elements of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right. *Ulico Cas. Co. v. Allied Pilots Ass'n,* 262 S.W.3d 773, 778 (Tex. 2008).

■■■■■ Waiver is largely a matter of intent, and for implied waiver to be found through a party's conduct, intent must be clearly demonstrated by the surrounding facts and circumstances. *In re Gen. Elec. Capital Corp.,* 203 S.W.3d 314, 316 (Tex. 2006). "Silence or inaction, for so long a period as to show an intention to yield the known right, is also enough to prove waiver." *Tenneco Inc. v. Enter. Prods. Co.,* 925 S.W.2d 640, 643 (Tex.1996). Waiver is ordinarily a question of fact, but when the surrounding facts and circumstances are undisputed, the question becomes one of

law. *Jernigan v. Langley,* 111 S.W.3d 153, 156–57 (Tex.2003).

## C. Implied waiver

In its fourth conclusion of law, the trial court stated that "Texcel has proven RMIT waived its rights to receive the underpaid commissions that were owed to RMIT by Texcel after May 1, 2006." RMIT asserts that the evidence and findings show "mere" acceptance of payments and possibly a lack of care on its part, which are insufficient to support a legal conclusion of implied waiver. RMIT asserts there is "no evidence or insufficient evidence" of its intent to yield its right to payment of nine-percent commissions. Thus, according to RMIT, we must reverse the trial court's conclusion that Texcel proved waiver.

We conclude that the findings and supporting evidence provide a sufficient basis for the trial court's conclusion that RMIT waived its right to collect any underpaid commissions after May 1, 2006. The evidence at trial demonstrated, and the trial court found, that RMIT received commission payments at a rate of five percent beginning in October 2001. The trial court also found that after May 1, 2006, RMIT received monthly statements showing the amount of monthly sales and the amount of commissions paid. From this information, the trial court found, RMIT could have calculated it was being paid only five-percent commissions, though it never made those calculations.[7] The trial court also found that RMIT did not complain of underpaid commissions before the agreement was terminated in 2012. These findings (numbered twelve through fifteen) are supported by the monthly statements themselves, which were introduced into evidence, and by the testimony of RMIT partner Robert Merkin that he could have calculated the commission rate from the sales reports but did not do so until the contract was terminated in February 2012.

As previously explained, silence or inaction for so long a period as to show an intention to yield the known right is sufficient to prove waiver. *See Tenneco,* 925 S.W.2d at 643. *Tenneco* addressed a contractual provision prohibiting transfer of an ownership interest in a fractionation plant unless the transferee agreed to deliver at least 31,000 barrels of natural gas liquids per day. *Id.* at 642. The Texas Supreme Court held that one group of owners waived their complaint concerning a transferee's failure to meet the delivery obligation by accepting the transferee's delivery of substantially less than the required 31,000 barrels per day for three years without complaint. *Id.* at 643.

Similarly, RMIT's conduct in this case together with its silence or inaction—accepting commission payments calculated at a rate of five percent for nearly six years without complaint—was intentional conduct inconsistent with claiming a known right to receive commissions at a rate of nine percent. We therefore hold that the evidence summarized above is legally and factually sufficient to support the trial court's findings and its conclusion of waiver. *See Shaver v. Schuster,* 815 S.W.2d 818, 825 (Tex.App.–Amarillo 1991, no writ) (holding waiver of contract provision by conduct was fact question regarding party's intent as revealed by reasonable inferences drawn from the evidence, which was

---

7. Our dissenting colleague focuses on the finding that RMIT never made the calculations, arguing that this finding is supported by the evidence and forecloses implied waiver. As we explain below, however, actually making the calculations is not legally required for implied waiver. Accordingly, we need not set aside this finding in order to affirm the trial court's waiver holding.

sufficient to support jury's finding of waiver).

RMIT argues that Texcel was required to prove that RMIT actually (1) calculated the percentage of the commissions it was paid, (2) knew that the legal effect of those payments was to breach the contract, and (3) intended to accept the non-compliant payments. RMIT is incorrect. Waiver requires either actual intent to relinquish a right *or* intentional conduct inconsistent with claiming the right— not both.[8] *Ulico Cas. Co.*, 262 S.W.3d at 778; *Tenneco Inc.*, 925 S.W.2d at 643. As the

Restatement of Contracts explains, "[t]he common definition of waiver may lead to the incorrect inference that the promisor must know his legal rights and must intend the legal effect of the promise [to waive a condition]. But ... it is sufficient if he has reason to know the essential facts." Restatement (Second) of Contracts § 84 cmt. b (1981); *see id.* §§ 93, 247.[9] Proof regarding a party's actual understanding of the legal consequences of those facts is not required, as parties are presumed to know and understand the legal effect of their contracts and waivers.[10]

8. To the extent our dissenting colleague suggests that implied waiver requires evidence that a party had actual knowledge of a breach of contract, that position is contrary to Texas Supreme Court precedent in two ways. First, the "actual knowledge" element of waiver analysis focuses on "an *existing right*," *Ulico Cas. Co.*, 262 S.W.3d at 778 (emphasis added), and there is no dispute here that RMIT actually knew of its right to receive commissions at a rate of nine percent. Second, as explained above, waiver requires either "the party's actual intent to relinquish the right, *or* intentional conduct inconsistent with the right." *Id.* (emphasis added). Intentional conduct inconsistent with the right may be proven with evidence of the surrounding facts and circumstances, *see In re Gen. Elec. Capital Corp.*, 203 S.W.3d at 316, as it was here with evidence that RMIT actually knew facts showing that a breach had occurred at the time it accepted the commissions. The dissent apparently views such evidence as insufficient to support the trial court's conclusion of waiver, but the dissent does not explain how the legal standard it proposes differs from requiring a showing of actual intent to relinquish the right in every case. We decline to discard the supreme court's alternative avenue of proving waiver with evidence of intentional conduct inconsistent with claiming a known right.

9. *See also Slay v. Burnett Trust*, 143 Tex. 621, 187 S.W.2d 377, 394 (Tex.1945) (adopting principle that waiver of remedy must be made "with knowledge, or means of knowledge, of the facts"); *Johnson Mfg. Co. v. Edwards*, 344 S.W.2d 506, 512 (Tex.Civ.App.–Amarillo 1961, writ ref'd n.r.e.) (applying *Slay* to hold

party did not waive right to terminate contract for non-payment of royalties because it had sought to recover royalties at point before it "had sufficient information upon which to plead for a termination"); Richard A. Lord, 13 Williston on Contracts § 39:22, at 654 (4th ed. 2013) ("[T]he party charged with waiver may not plead willful ignorance [of the other party's failure to perform] and escape the waiver; rather, a waiver made with knowledge of facts which would put an ordinary person on inquiry is sufficient."). We note that we do not base our decision on constructive knowledge of essential facts, but rather on RMIT's actual knowledge of facts sufficient to show a breach—a standard we discuss further below.

10. *See In re Longoria*, 470 S.W.3d 616, 632 (Tex.App.–Houston [14th Dist.] 2015, orig. proceeding) ("[A] party who signs a contract is presumed to know its contents and its legal effects."); *In re M.C.*, 412 S.W.3d 48, 53 (Tex. App.–El Paso 2013, pet. denied) (applying presumption to waiver of right to expunction); *Gunn v. Baptist/St. Anthony's Health Network*, 405 S.W.3d 239, 243 (Tex.App.– Amarillo 2013, no pet.) (concluding party signed waiver with knowledge of its effect as required by statute given presumption that party who signs contract knows meaning of words used and fully comprehended their legal effect); *R. Conrad Moore & Assocs. v. Lerma*, 946 S.W.2d 90, 94 (Tex.App.–El Paso 1997, writ denied) (holding parties waived right to refund of earnest money under contract to build and purchase house by their subsequent conduct pursuing construction, and rejecting argument that parties were un-

To support its position, RMIT relies on our opinion in *Clear Lake Center, L.P. v. Garden Ridge, L.P.*, 416 S.W.3d 527 (Tex. App.–Houston [14th Dist.] 2013, no pet.). We conclude, however, that *Clear Lake* supports our holding. In that case, Garden Ridge claimed that from 2003 to 2009, Clear Lake charged it impermissible fees under a commercial real property lease. *Id.* at 532–34. Clear Lake raised several affirmative defenses, including waiver. *Id.* at 533. We held that Garden Ridge's payments did not constitute waiver because Garden Ridge paid the management fee without knowing that the fee included charges not authorized by the lease, and indeed the fee statements suggested the entire fee was proper. *Id.* at 543. We said, "Clear Lake cites no case holding that a party to a contract waived a right when the plaintiff did not actually know facts pertinent to the breach." *Id.* at 542. We then examined *Tenneco* and explained that actual knowledge of the facts pertinent to that breach—including the delivery of less than 31,000 barrels per day—was key to establishing waiver. *Id.* RMIT

urges that this discussion supports its argument.

In this case, however, the key to establishing waiver identified in *Tenneco* and *Clear Lake* is present. The trial court found that after May 1, 2006, RMIT received monthly statements from Texcel showing both the amount of sales revenue and the amount of commissions paid. Each month's commissions amounted to five percent of the sales revenue, and there is no dispute that RMIT knew the contract entitled it to a commission rate of nine percent for all sales. RMIT thus had actual knowledge of the facts pertinent to the breach—that is, of material facts sufficient to support a legal conclusion that the contract had been breached [11]—as early as May 1, 2006, and it had been paid commissions at a rate of five percent since October 2001.[12] Yet RMIT did not complain of the alleged underpaid commissions until 2012—long after the statute of limitations had run on many of the commission payments and the contract had terminated.[13]

aware of right to refund based on presumption that contracting party understands contract's contents).

11. *See Ford v. Culbertson,* 158 Tex. 124, 308 S.W.2d 855, 865 (Tex.1958) (explaining that waiver "occurs where one in possession of any [contractual] right ..., with full knowledge of the material facts, does or forbears to do something, the doing of which or the failure or forbearance to do which is inconsistent with the right or his intention to rely upon it"); *Clear Lake Ctr., L.P.,* 416 S.W.3d at 542; *Johnson Mfg. Co.,* 344 S.W.2d at 512 ("sufficient information upon which to plead for" relief); Restatement (Second) of Contracts § 84 cmt. b (focusing on knowledge of "essential facts").

12. We recognize, of course, that Texcel did not use the words "five percent" in the monthly statements. But RMIT does not contend that the use of those words was necessary to show a breach or, put another way,

that the facts contained in the statements do not constitute a breach. To the contrary, the trial court found that Texcel did breach the contract by making the commission payments as shown on the statements.

13. These facts also distinguish the present case from *Davis–Lynch, Inc. v. Asgard Technologies, LLC,* 472 S.W.3d 50, 68 (Tex.App.–Houston [14th Dist.] 2015, no pet.) (holding no conclusive proof of waiver where no evidence employer knew "facts pertinent to the purported negligence" of staffing company in failing to conduct background checks), and *Brannan Paving GP, LLC v. Pavement Markings, Inc.,* 446 S.W.3d 14, 21–23 (Tex.App.–Corpus Christi 2013, pet. denied) (holding contractor did not waive subcontractor's breach of its obligation to obtain insurance covering contractor as additional insured because contractor did not receive copies of insurance policies from which it could verify their contents and accident occurred two months after breach).

This evidence supports a reasonable inference that RMIT waived its right to the underpaid commissions. *See Tenneco Inc.*, 925 S.W.2d at 643; *Clear Lake Ctr., L.P.*, 416 S.W.3d at 542.

To buttress its argument that the trial court erred in concluding .Texcel proved waiver, RMIT points to the trial court's findings of fact sixteen through nineteen, which state:

16. RMIT never expressly relinquished its right to be paid the 9% commission called for in the contract.

17. RMIT never approved the unilateral reduction of its commission from 9% to 5% under the contract.

18. RMIT never intended to make TEXCEL's unilateral reduction of the commission from 9% to 5% valid.

19. RMIT never agreed to modify or revise the commission rate under its contract with TEXCEL from 9% to 5%.

In considering these findings, we are bound to assume the validity of the trial court's judgment. *Leonard v. Eskew*, 731 S.W.2d 124, 131 (Tex.App.–Austin 1987, writ ref'd n.r.e.); *see Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 251–52 (Tex.App.–Houston [14th Dist.] 1999, pet. denied). Thus, we must construe the judgment and any attendant findings of fact and conclusions of law in a way that sustains the judgment if we are able to do so without doing ·violence to the language used. *Matter of Marriage of Merrikh*, 14–14–00024–CV, 2015 WL 2438770, at *5 (Tex.App.–Houston [14th Dist.] May 19,

2015, no. pet. h.). So construed, findings sixteen through nineteen address whether RMIT· expressly waived its right to receive commissions at a rate of nine percent, not whether RMIT waived its right by implication—a defense that the trial court addressed separately in findings twelve through· fifteen.[14] Based on· findings twelve through fifteen, the trial court correctly concluded that ·Texcel impliedly waived its right to receive any underpaid commissions not barred by the statute of limitations. We overrule RMIT's issue on cross-appeal. Because we do so, we need not address whether the trial court erred in finding·that Texcel breached the agreement and denying Texcel's counterclaim for declaratory relief.

## CONCLUSION

Having held that the damages awarded by the trial court are barred by the statute of limitations, we reverse the trial court's judgment awarding $21,589.88 for breach of contract by underpaying commissions between October 1, 2001 and May 1, 2006, together with the related awards of additional damages under. Colorado law, attorney's fees, and court costs. We render judgment that RMIT take nothing on these claims. In addition, because Texcel proved RMIT waived any right to damages not barred by the four-year limitations period, we affirm the portion of the judgment denying all other requested relief.

(Frost, C.J., dissenting)

---

14. For this same reason, our dissenting colleague's reliance on *Shannon v. Memorial Drive Presbyterian Church U.S.* is misplaced. 476 S.W.3d 612 (Tex.App.–Houston [1st Dist.] 2015, pet. filed). *Shannon* did not involve an allegation of implied waiver by intentional conduct inconsistent with claiming a known right. Rather, it addressed express waiver: whether a former employee unequivocally manifested an actual intent to no longer assert her rights under a confidentiality and anti-disparagement agreement ·with a former employer when she signed an authorization permitting former employers to· provide full details concerning her past employment. *Id.* at *8–9. Moreover, there was no allegation in *Shannon* that the agreement had been breached at the time the former employee signed the authorization, so ·that case does not address the point raised in the dissent.

Kem Thompson Frost, Chief Justice, dissenting.

"Should have known" is not the standard for common-law waiver under Texas law. Yet, today the court holds that a party waives its right to recover if the party *should have known* that its failure to act was inconsistent with its known rights. Because today's holding goes against our court's precedents, I respectfully dissent.

## Insufficiency of the Evidence to Support Waiver

Appellee Intecx, L.L.C. d/b/a/ Rocky Mountain Industrial Technologies ("RMIT") argues on cross-appeal that the record contains insufficient evidence that it waived its right to receive commissions not paid between May 1, 2006 and February 29, 2012. The majority holds the statute of limitations bars recovery of some of these commissions and that waiver bars recovery of the rest.

The statute of limitations bars all of RMIT's claims to funds owed before September 10, 2008, as the majority concludes. But, there is no waiver, so waiver does not bar recovery of the funds owed between September 2008 and February 2012. The majority errs in holding otherwise.

The majority notes that waiver may be asserted as an affirmative defense against a party who intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right.[1] The elements of waiver include (1) an existing right, benefit, or advantage held by a party, (2) the party's actual knowledge of its existence, and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right.[2] According to the majority, RMIT's failure to make calculations that would have revealed the underpayments and RMIT's failure to complain about them amount to intentional conduct inconsistent with the right to collect unpaid commissions. Our precedent does not support that conclusion.

### *Actual knowledge is a prerequisite to intentional conduct inconsistent with claiming a known right.*

Citing *Tenneco Inc. v. Enterprise Products Company*,[3] the majority holds that RMIT's silence and inaction—not calculating and not complaining—constitute intentional conduct inconsistent with claiming a known right to receive commissions at a rate of nine percent.[4] But, case law holds that silence and inaction are sufficient to constitute intentional conduct inconsistent with claiming a known right *only* when a party has actual knowledge that its conduct is inconsistent with claiming a known right.[5] Our court already has rejected the interpretation of the *Tenneco Inc.* precedent the majority applies today.[6]

In *Clear Lake Center, L.P. v. Garden Ridge, L.P.*, our court explained that the *Tenneco Inc.* holding is based on the party's actual knowledge of the facts constituting the breach.[7] This actual knowledge is a crucial part of establishing waiver.[8]

---

1. *Singleton v. Elliott*, 14–13–00040–CV, 2014 WL 1922260, at *4 (Tex.App.–Houston [14th Dist.] May 13, 2014, no pet.) (mem.op.).

2. *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex.2008).

3. *See* 925 S.W.2d 640, 642–44 (Tex.1996).

4. *See ante* at 15.

5. *See Clear Lake Ctr., L.P. v. Garden Ridge, L.P.*, 416 S.W.3d 527, 542–43 (Tex.App.–Houston [14th Dist.] 2013, no pet.).

6. *See id.* at 542.

7. *See id.*

8. *Id.* at 543.

Constructive knowledge—*what RMIT might have discovered if it had only performed the math*—is not enough for waiver.[9] In *Clear Lake Center,* our court held that paying an improper fee was not intentional conduct inconsistent with claiming a known right because the paying party did not realize the fee was improper.[10] Our court implicitly held that a party does not intentionally act in a way that is inconsistent with claiming a known right unless the party has actual knowledge that the action is inconsistent with claiming the right.[11] There is no evidence of actual knowledge in today's record.

The majority misreads *Clear Lake Center* as holding that a party intentionally acts inconsistently with claiming a known right if the party knew facts pertinent to its right of recovery but did not act upon its right to recover.[12] In *Clear Lake Center,* our court actually held that a party's simple knowledge of pertinent facts coupled with inaction is not enough for a court to conclude a party intentionally acted inconsistently with its right to recover for breach of contract.[13] Under the *Clear Lake Center* precedent, a party must have actual knowledge of the facts constituting the breach of contract for its inaction to be intentionally inconsistent with its right to recover based on that breach.[14]

The majority points out that a party is presumed to know the contents of any contract the party signs and the contract's legal effects. The statement is true but the majority misapplies it. As properly applied to this case, the presumption means that if RMIT knew Texcel was not paying the proper amount of commission—nine percent of the sales revenue—RMIT presumptively would know that this failure by Texcel constituted a breach of the contract. The presumption does not mean that the court should presume RMIT knew Texcel was not paying the proper amount because RMIT knew some facts pertinent to the breach. As the majority acknowledges, the question of whether RMIT knew Texcel was not paying the proper amount is a question of fact.[15] The fact finder determined RMIT did not know Texcel was not properly compensating RMIT.

In *Clear Lake Center,* the party with the known right of recovery (Garden Ridge) took an action that was inconsistent with claiming that right.[16] But, our court held that the action—paying an improper fee—was unintentional because the party paid the fee "without actually knowing that the fee was in part [improper.]"[17] Emphasizing the importance of actual knowledge, our court held "Garden Ridge's lack of knowledge is crucial."[18] The standard for

9. *See id.* at 542–43.

10. *Id.*

11. *Id.* at 542–43.

12. *See ante* at 15–16.

13. *See Clear Lake Ctr.,* 416 S.W.3d at 543.

14. *Id.* at 542–43. *See also Shannon v. Memorial Drive Presbyterian Church U.S.,* 476 S.W.3d 612, 627 (Tex.App.—Houston [14th Dist.] 2015, pet. filed) (concluding that waiver was not established because the party in question "did not unequivocally manifest the intent not to assert" the rights at issue); *Davis-*

*Lynch, Inc. v. Asgard Techs., LLC,* 472 S.W.3d 50, 68 (Tex.App.—Houston [14th Dist.] 2015, no pet.) (concluding that waiver was not established and relying upon the *Clear Lake Center* case for the proposition that "actual knowledge is required to establish waiver").

15. *See ante* at 13–14.

16. *See Clear Lake Ctr.,* 416 S.W.3d at 542–43.

17. *Id.*

18. *Id.* at 543. The court was not referring to a lack of knowledge by Garden Ridge that it had a right to sue for breach of contract. *Id.*

finding waiver through a party's intentional action inconsistent with a known right, articulated in *Clear Lake Center*, is that a party may engage in intentional conduct inconsistent with claiming a known right *only* when the party has actual knowledge the action is inconsistent with the right.[19]

Lack of awareness of any facts pertinent to a breach is sufficient, but not necessary, to meet the standard *Clear Lake Center* articulates.[20] Because lacking knowledge of the facts pertinent to the breach was sufficient to show Garden Ridge lacked actual knowledge of the facts constituting the breach, the *Clear Lake Center* court appropriately noted that Garden Ridge did not know the facts pertinent to the breach.[21] Because it is possible to know some facts pertinent to a breach [22] but still lack knowledge of the facts constituting the breach, neither *Tenneco, Inc.* nor *Clear Lake Center* state that the standard for determining waiver is a party's lack of knowledge of facts pertinent to the breach.[23] Indeed, such a standard would present a slew of thorny problems. The majority does not articulate how courts should determine which facts are pertinent to the breach or how many pertinent facts

a party needs to know to be charged with waiver. Nor does the majority square this proffered standard with waiver jurisprudence that cuts against it.

Today's holding is at odds with *Clear Lake Center*. Though the majority purports to follow that precedent, the majority opinion clashes with *Clear Lake Center's* interpretation of *Tenneco Inc.* on the central issue. Rather than follow that interpretation, as other panels have done,[24] the majority steps right over the holding. Reasonable people can disagree about which is the better rule—actual knowledge (as the *Clear Lake Center* court held) or constructive knowledge (as the majority holds today)—but all should agree that it is a bad idea to have two rules. That is why no panel of this court is at liberty to disregard another panel's interpretation of supreme court precedent.[25] This important principle of stare decisis safeguards predictability in the law so that our court does not require actual knowledge for some and only constructive knowledge for others. The panels of the court should apply the same rule to all. Absent a decision from a higher court or this court sitting en banc that is on point and con-

---

19. *See id.*

20. *See id.*

21. *See id.* at 542.

22. At one point, the majority suggests that the "facts pertinent to the breach" equate to the "material facts sufficient to support a legal conclusion that the contract had been breached." *See ante* at 18. The problems inherent in using actual knowledge of "facts pertinent to the breach" as the legal standard apply with equal force vis a vis to the legal standard of actual knowledge of "material facts sufficient to support a legal conclusion that the contract had been breached." Although the majority states RMIT knew material facts that would have enabled it to learn of the facts constituting the breach, the trial court specifically found that RMIT did not know the facts constituting the breach. The majority does

not suggest RMIT knew the facts constituting the breach. "Should have known" is not the standard, but that is the standard the majority applies.

23. To the extent the majority relies upon *Slay v. Burnett Trust* as authority for the proposition that a party waives its right to recovery if it knows "facts pertinent to the breach," *Slay* did not involve common-law waiver. *See* 143 Tex. 621, 187 S.W.2d 377, 394 (1945).

24. *See Shannon*, 476 S.W.3d at 627; *Davis–Lynch, Inc.*, 472 S.W.3d at 68.

25. *See Chase Home Fin., L.L.C. v. Cal Western Reconveyance Corp.*, 309 S.W.3d 619, 630 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

trary to the prior panel decision, or an intervening and material change in the statutory law, this panel is bound by the holding in *Clear Lake Center*.[26] Today's contrary holding muddles the jurisprudence.

### The trial court found RMIT lacked actual knowledge.

The majority characterizes the dissenting opinion as stating that "implied waiver requires direct evidence that a party had actual knowledge of a breach of contract."[27] The majority also says the dissent views the evidence that RMIT knew facts relating to the breach as insufficient to support the trial court's conclusion of waiver.[28] Neither characterization is accurate.

The trial court found that "RMIT could have calculated that it was only being paid 5%," but that "RMIT never made those calculations." The evidence is sufficient to support the trial court's finding that RMIT never calculated the percentage of commissions it was receiving. In making this finding, the trial court found RMIT did not have actual knowledge of the facts constituting the breach. The majority is not the fact finder. This court should give deference to the trial court's express finding[29] —no actual knowledge—and conclude that the trial court's findings of fact do not support its conclusion of law regarding waiver. The majority does neither.

Although the majority criticizes reliance on the trial court's findings, the majority does not set aside the trial court's finding that RMIT did not have actual knowledge that it was being underpaid. Absent actual knowledge, RMIT's inaction was not *intentional* conduct inconsistent with its known right to recover the full amount of commissions owed under the contract, even if RMIT's silence and inaction could be considered conduct inconsistent with its known right of recovery.[31]

Relying on the trial court's findings that RMIT *could have* discovered that its conduct was inconsistent with its known right of recovery, the majority skirts the requirement that for a party to act intentionally in a way that is inconsistent with the party's rights, the party must have actual knowledge of the facts constituting the breach. Just as Garden Ridge in *Clear Lake Center* lacked actual knowledge that the fee it paid was improper,[32] RMIT lacked actual knowledge that the commissions it received were improper amounts. Without citing any authority (and ignoring binding precedent), the majority fashions a new rule that a party intentionally acts inconsistently with its known rights (and therefore, waives those rights) if the party *should have known* the action it took was inconsistent with its known rights.[33] Holding a party's inaction is intentionally inconsistent with its known right of recovery

---

26. *See id.*

27. *See ante* at 15 n. 7.

28. *See ante* at 15 n.7.

29. Nothing in this dissent suggests that implied waiver requires direct evidence. And, nothing in this dissent suggests that the trial court's findings of fact are not supported by sufficient evidence. The dissent does not conflict with *Ulico Cas. Co.*, 262 S.W.3d at 778, or *In re Gen. Elec. Capital Corp.*, 203 S.W.3d at 316. While intentional conduct inconsistent with a known right may be proven with evidence of the surrounding facts and circumstances, in this case, after considering the evidence of the surrounding facts and circumstances, the trial court found RMIT did not have actual knowledge of the facts constituting the breach.

31. *See id.*

32. *See Clear Lake Ctr.*, 416 S.W.3d at 542–43.

33. *See ante* at 14–17.

when a party lacks knowledge of the inconsistency goes against our precedents and creates a conflict in this court's case law.[34]

## Conclusion

RMIT did not know its inaction was inconsistent with its right to recover the full amount of commissions owed under the contract, so RMIT's inaction does not operate as a waiver of its right to pursue recovery. Neither the record nor this court's binding precedent supports the majority's waiver analysis.[35]

---

**34.** *See Shannon,* 476 S.W.3d at 627; *Davis–Lynch, Inc.,* 472 S.W.3d at 68; *Clear Lake Ctr.,* 416 S.W.3d at 543.

**35.** *See Shannon,* 476 S.W.3d at 627; *Davis–Lynch, Inc.,* 472 S.W.3d at 68; *Clear Lake Ctr.,* 416 S.W.3d at 543.