**Affirmed and Memorandum Opinion filed July 2, 2024.**



In The

# Fourteenth Court of Appeals

### NO. 14-22-00878-CV

## BLAKE INTERNATIONAL RIGS, L.L.C. AND BLAKE INTERNATIONAL USA RIGS, L.L.C., Appellants

### V.

## STALLION OFFSHORE QUARTERS, INC., Appellee

**On Appeal from the 113th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2018-17833**

## MEMORANDUM OPINION

Appellants Blake International Rigs, L.L.C. ("BI Rigs") and Blake International USA Rigs, L.L.C. ("BI USA") appeal a judgment in favor of appellee Stallion Offshore Quarters, Inc. ("Stallion") following a bench trial. In two issues, appellants argue: (1) the trial court erred in how it interpreted the ambiguity in the contract language at issue; and (2) there is legally insufficient evidence supporting the imposition of joint and several liability. We affirm.

## I. BACKGROUND

In 2011, Stallion and BI USA entered into a contract for Stallion to lease modular living units to BI USA. The lease defined the "LESSEE" as "Blake International USA Rigs," located at 410 S. Van Avenue in Houma, Louisiana, and listed Michael "Beau" Blake, Jr. ("Blake") as the contact. Blake is the President and CEO of BI USA, and he signed the 2011 contract as the "VP of Business Development & Admin" of "Blake International Drilling."

On September 12, 2011, Blake International Rigs LLC ("BI Rigs") was formed using the same address in Houma, Louisiana. Blake is also the President and CEO of BI Rigs.

In April of 2013, another lease was executed for the same modular units subject to the 2011 lease ("the 2013 agreement"). This time, the contract defined "LESSEE" as "Blake International," with the same address in Houma, Louisiana. Blake signed the 2013 agreement as president and CEO of "Blake International."

Subsequently, Stallion sued BI USA and BI Rigs for breach of contract and conversion based on the 2013 agreement, alleging that BI USA and BI Rigs were alter egos of each other. Stallion filed a motion for partial summary judgment, arguing that both BI USA and BI Rigs breached the 2013 agreement. In response, appellants did not dispute that "Blake International" in the lease included BI USA, but they disputed that it included BI Rigs. The trial court granted Stallion a partial summary judgment that "Blake International" in the 2013 lease included BI USA.

Following a trial to the bench, the trial court entered a final judgment in favor of Stallion on August 26, 2022, and subsequently issued findings of fact and conclusions of law. The trial court found that the term "Blake International" in the 2013 agreement was ambiguous and that it included both BI USA and BI Rigs. The

trial court awarded Stallion damages and rendered judgment for Stallion and against BI USA and BI Rigs, jointly and severally, for a total amount of $2,627,048.00 plus court costs and interest.

This appeal followed.

## II.   STANDARD OF REVIEW

We review a trial court's conclusions of law de novo. *Trelltex, Inc. v. Intecx, L.L.C.*, 494 S.W.3d 781, 790 (Tex. App.—Houston [14th Dist.] 2016, no pet.). When performing a de novo review, we exercise our own judgment and redetermine each legal issue. *Id.* To make this determination, we consider whether the conclusions are correct based on the facts from which they are drawn. *Id.*

We review a trial court's findings of fact for legal and factual sufficiency. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). A party will prevail on its legal-sufficiency challenge on an issue for which the opposing party bears the burden of proof if there is a complete absence of evidence of a vital fact or if the evidence offered to prove a vital fact is no more than a scintilla. *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156 (Tex. 2014). We must credit favorable evidence that supports the verdict if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Anything more than a scintilla of evidence is legally sufficient to support a finding. *See Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996). To be more than a scintilla, the evidence must "rise to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 347 (Tex. 2015).

3

### III. CONTRACT AMBIGUITY

In their first issue, appellants argue the trial court erred in its identification of "the nature and scope of the ambiguity in the 2013 Lease." Appellants concede in their brief that "[a]ll parties below agreed that the two-word phrase 'Blake International' in the 2013 lease was ambiguous . . . ." Appellants argue that the trial court erred when it found that "Blake International" in the 2013 lease included two entities because the lease's language refers to a single lessee. In essence, appellants argue that the scope of the trial court's finding was limited to determining which of the two Blake entities was intended by the use of "Blake International."

### A. APPLICABLE LAW

To recover on a breach of contract claim, a claimant must prove: (1) the existence of a valid contract; (2) the claimant performed or tendered performance; (3) the other party breached the contract; and (4) the claimant was damaged as a result of the breach. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 n.21 (Tex. 2018). Whether a contract is ambiguous is a question of law. *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 763 (Tex. 2018). Likewise, the proper interpretation of an unambiguous contract is a question of law. *Id.*

A contract is ambiguous if the language is susceptible to more than one reasonable interpretation. *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 479 (Tex. 2019); *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). The ambiguity may be patent or latent. *URI, Inc.*, 543 S.W.3d at 765. A patent ambiguity is evident on the face of the contract, while a latent ambiguity arises when a contract which is unambiguous on its face is applied to the subject matter with which it deals and an ambiguity appears by reason of some collateral matter. *Id.*

4

The intended meaning of ambiguous contract language is a fact issue for the trier of fact and extraneous evidence may be admitted to determine the language's meaning. *Italian Cowboy*, 341 S.W.3d at 333–34; *Quality Infusion Care, Inc. v. Health Care Serv. Corp.*, 224 S.W.3d 369, 379 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *see Gallagher Headquarters Ranch Dev., Ltd. v. City of San Antonio*, 303 S.W.3d 700, 702 (Tex. 2010) (per curiam); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). When a contract's meaning is disputed, the primary objective is to ascertain and give effect to the parties' intent as expressed in the instrument. *URI, Inc.*, 543 S.W.3d at 763. Objective manifestations of intent control, not "what one side or the other alleges they intended to say but did not." *Id.* at 763–64. "Understanding the context in which an agreement was made is essential in determining the parties' intent *as expressed in the agreement*, but it is the parties' expressed intent that the court must determine." *Barrow-Shaver Res.*, 590 S.W.3d at 451.

**B.    ANALYSIS**

Here, the contract shows "LESSOR" and "LESSEE" as follows:

RENTAL AGREEMENT

DATE: April 23, 2013

**LESSOR:**

| | | |
|---|---|---|
| *Corporate office:* | and | *Louisiana office location:* |
| Stallion Offshore Quarters, Inc. | | Stallion Offshore Quarters, Inc. |
| 950 Corbindale, Suite 300 | | 13818 S. Guegnon St. |
| Houston, Texas 77024 | | Abbeville, LA 70510 |
| Attention: John D. Lindley | | Attn: Bruce Webb, Division Manager |
| c/o: Sam LaPoint, Contracts Mgr. | | email: bwebb@sofs.cc ; |
| email: slapoint@sofs.cc | | Tel: 337-892-6184 (direct); Cell: 985-232-2727 |
| Tel: 713-275-4154 ; Fax: 713-528-1276 | | Main: Tel: 337-898-0044; Fax: 337-898-0094 |

**LESSEE:**

Blake International
410 S. Van Avenue
Houma, LA 70363
Attn: Michael "Beau" Blake Jr.
Telephone: 985-274-2210
Fax: 985-274-2022

**Delivery Point:**

To be designated by LESSEE

It is undisputed that there is no entity named "Blake International" and that two entities (BI USA and BI Rigs) have the words "Blake" and "International" in their name; are located at 410 S. Van Avenue in Houma, Louisiana; and have Blake as their president and CEO. Thus, we conclude that the trial court correctly found that there is latent ambiguity in the contract in the term "Blake International" because an ambiguity arises when the words of the contract are applied to the subject matter it deals with. *See URI*, 543 S.W.3d at 765; *Barrow-Shaver*, 590 S.W.3d at 479; *Italian Cowboy*, 341 S.W.3d at 333.

In response to Stallion's motion for partial summary judgment on its breach of contract claim, appellants did not dispute that "Blake International" in the 2013 agreement included BI USA. Accordingly, the trial court granted Stallion a partial summary judgment finding that BI USA was intended to be included in the term "Blake International," and the issue of whether "Blake International" was intended to include BI Rigs remained a fact question for the fact finder to resolve at trial. *See Italian Cowboy*, 341 S.W.3d at 333–34.

6

Appellants argue on appeal that the trial court erred in determining that "Blake International" included both BI USA and BI Rigs because the contract uses the singular version "LESSEE" and the language associated with "LESSEE" in the contract is also singular. However, "LESSEE" is a defined term in the contract, and a term may be defined as consisting of multiple items, things, or parties. *See Summit Global Contractors, Inc. v. Enbridge Energy, L.P.*, 594 S.W.3d 693, 707 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (C.J., Frost, concurring) ("The practice of using a singular noun as a shorthand reference for multiple parties can confuse readers (and even writers) . . . . When a writer uses a defined term in the singular to refer to more than one party, the writer naturally uses singular pronouns instead of plural pronouns to refer to the parties falling within the defined term."); *see e.g.*, *Harrison v. Bentley Express Ltd., Inc.*, No. 05-00-01794-CV, 2001 WL 1360206, at *2 (Tex. App.—Dallas Nov. 7, 2001, no pet.) (resolving ambiguity of whether "owner" in a contract was singular or plural and concluding it was plural when parol evidence showed that the intent of the parties was that "owner" included both owners of the two properties involved in the dispute). Therefore, we are not persuaded by appellants' argument. We conclude the trial court correctly ruled that the interpretation of the ambiguous term "Blake International" is not limited to a singular entity.

We overrule appellants' first issue.

## IV. JOINT & SEVERAL LIABILITY

In their second issue, appellants argue there is legally insufficient evidence supporting the joint and several liability finding because "[n]one of Stallion's evidence demonstrated that Stallion, [BI USA], or [BI Rigs] ever stated or impliedly expressed a belief that both Blake entities were joint lessees under the Lease, equally obligated to pay rent and equally entitled to receive possession and

7

make use of Stallion's equipment."

## A. APPLICABLE LAW & STANDARD OF REVIEW

Defendants are jointly and severally liable for breaches of contracts to which they are a party. *Z.M. Shayjayadam3, LLC v. Omnova Sols., Inc.*, No. 14-19-00623-CV, 2020 WL 6278615, at *10 (Tex. App.—Houston [14th Dist.] Oct. 27, 2020, no pet.) (mem. op.). Joint and several liability is appropriate in contract cases when two or more persons promise the same performance. *Id.* If an obligation is joint and several, then any one of the obligors may be held liable. *Id.*

## B. ANALYSIS

Whether BI Rigs and BI USA are jointly and severally liable depends on whether the parties intended that both be parties to the contract when Blake signed for "Blake International." *See Z.M. Shayjayadam3, LLC*, 2020 WL 6278615, at *10. As previously concluded, this was a fact question for the fact finder. Appellants second issue on appeal challenges the legal sufficiency of the evidence supporting the trial court's finding that the ambiguous term "Blake International" was intended by the parties to include BI Rigs.

Here, it is undisputed that Blake is the president and CEO for both BI USA and BI Rigs and that he signed the 2013 contract for "Blake International" as president and CEO. It is also undisputed that both entities have the same address and both own and lease offshore drilling rigs in the Gulf of Mexico that utilize modular living quarters like those leased by Stallion. The 2011 lease defined the "LESSEE" as "Blake International USA Rigs," and there was evidence that the employees of BI RIGS who negotiated the 2013 lease with Stallion were aware that "the only things that have changed from the [2011] agreement are the company name and contact, dates, and Exhibit A." There is also evidence that

8

Blake stopped considering himself the President and CEO of BI USA when BI Rigs started paying his salary and that his salary for 2013 was paid by BI Rigs. The employees of BI Rigs who negotiated the 2013 lease were also involved in operating BI USA. These BI Rigs employees never communicated during negotiations that they were excluding BI Rigs from the negotiations for the 2013 contract. And there was evidence that BI Rigs' officers and employees used the term "Blake International" to refer to both BI USA and BI Rigs. Despite requesting changes to the 2013 contract prior to its execution, the employees of BI Rigs did not request that the term "Blake International" be modified or changed. Stallion submitted into the record a letter from Blake to Stallion, dated July 24, 2014, stating that BI Rigs and Stallion entered into the 2013 contract and that BI Rigs was requesting cancellation of the contract.

It is undisputed that the parties intended to include BI USA in the 2013 agreement and there is legally sufficient evidence they intended to include BI Rigs. The term in the contract "Blake International" is applicable to both entities and was used to refer to both BI USA and BI Rigs by the parties. By implication, this evidence supports a finding that the parties intended to include both BI USA and BI Rigs as parties to the contract when they used the term "Blake International."

We conclude that a reasonable trier of fact could have inferred that the parties intended the term "Blake International" to include both BI USA and BI Rigs. Because there is legally sufficient evidence that both BI USA and BI Rigs promised the same performance in the 2013 contract, we conclude that joint and several liability is applicable. *See Z.M. Shayjayadam3*, 2020 WL 6278615, at \*10; *see also Nguyen v. Nguyen*, No. 14-19-00913-CV, 2021 WL 786628, at \*7 (Tex. App.—Houston [14th Dist.] Mar. 2, 2021, no pet.) (mem. op.) ("When two co-signers promise the same performance to the same promise, joint and several

9

liability usually arises unless a contrary intention is apparent in the language of the instrument."). We overrule appellants' second issue.

## V.  CONCLUSION

Having overruled both of appellants' issues on appeal, we affirm the trial court's judgment.


/s/      Margaret "Meg" Poissant
Justice


Panel consists of Justices Hassan, Poissant, and Wilson.


10