**Reversed and Remanded and Memorandum Opinion filed August 30, 2018.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00052-CV

## WILLIAM BEST, Appellant

## V.

## FALCON ROCK COMMUNITY ASSOCIATION, INC., Appellee

**On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 2015-35884**

# M E M O R A N D U M    O P I N I O N

This appeal arises out of a dispute over a subdivision's annual maintenance assessments. William Best appeals from a final judgment following a bench trial. The judgment awards appellee Falcon Rock Community Association, Inc. $2,560.80 for past-due maintenance assessments, related fees and charges, and interest. Best argues that the trial court erred in concluding he was not a "builder" entitled to a reduced rate of annual maintenance assessments because he did not hold a valid Texas builder's license. We conclude that under the covenants applicable to this

subdivision, a builder need not possess a Texas builder's license to qualify for the reduced builder's rate of annual maintenance assessments. We therefore reverse the trial court's judgment and remand this case for a new trial.

BACKGROUND

Falcon Rock is a deed-restricted community. Falcon Rock's developer established a Declaration of Covenants and Restrictions in 2004. Article VI of the covenants provides, in pertinent part:

> Section 3. Covenant for Assessments. Subject to the provisions set forth below in Sections 3 and 4 relating to the rate at which the maintenance charge and assessment imposed herein shall be paid on unimproved Lots, each and every Lot in the [subdivision] is hereby severally subjected to and impressed with a regular annual maintenance charge or assessment in the amount of [$360.00] . . . the "full maintenance charge" . . . .

> Section 4. Unimproved Lots Owned by Declarant and Builders. Declarant shall be exempt of the full maintenance charge assessment for each Lot owned by them. Builder shall pay fifty percent (50%) of the full maintenance charge assessment for each Lot owned by them unless a resident structure has been built thereon and three (3) months have elapsed since the substantial completion of such residence, or the residence has been permitted to be occupied, whichever occurs first. . . . The term "substantial completion" . . . mean[s] that the residence is ready for sale or occupancy . . . .

Best is a California resident who has worked his entire adult life as a builder. In June 2009, Best purchased a vacant lot in the Falcon Rock subdivision subject to the covenants.[1] Best purchased the lot intending to build a house and later sell the improved property to a prospective homeowner; he had no intention of living in the

---

[1] Best testified during the bench trial that at the time he bought the vacant lot in Falcon Rock, his daughter was working on a graduate degree at the Texas Medical Center. Best testified that he bought the parcel so that he could work on a construction job while visiting his daughter, enabling him to spend more time with her.

house himself. At the time Falcon Rock brought this action in 2015, Best had not begun constructing any improvements to the lot, which was the last remaining vacant lot in the subdivision.

Falcon Rock started mailing Best demand letters for past-due assessments in 2010. The postal service returned the letters to Falcon Rock. The letters were undeliverable because Falcon Rock mailed them to the address of Best's vacant lot.[2] In July 2014, Falcon Rock retained counsel to investigate Best's past-due assessments. A few months later, Falcon Rock's attorney sent a demand letter to the address of Best's vacant lot. The letter sought payment of past-due assessments and informed Best that Falcon Rock would file suit if the assessments were not paid. This letter was returned with "unable to forward" stamped on the envelope. Falcon Rock's attorney later sent another letter to Best—this time to his California address.

Best replied to this letter, arguing that he owed only half of the assessments because he was a "builder." Falcon Rock responded to Best's assertion that he was a builder entitled to the reduced assessments by continuing to insist that he owed the "full maintenance charge." When negotiations to resolve the dispute failed, Falcon Rock sued Best, seeking recovery of past-due assessments and fees for the years 2009 through 2015. Falcon Rock asserted several claims, including breach of contract.

Following a one-day bench trial, the court found for Falcon Rock. The court awarded Falcon Rock $2,560.80 in past-due assessments, related fees and charges, and interest, plus attorney's fees. The trial court subsequently signed findings of fact and conclusions of law. As pertinent here, the trial court made the following

---

[2] The warranty deed conveying the lot to Best listed Best's California address, not the address of the vacant lot in Falcon Rock, as the grantee's address.

3

findings:

> [Best] has failed to pay any annual charge or assessment for the years 2009 through 2015, which constitutes a clear and continuing violation of the Declaration under Article VI, Section 3 Covenant for Assessments.
>
> [Best] does not hold a builder's license valid in the state of Texas.
>
> The interpretation of the term "builder" as used in the Declaration to include an individual homeowner who does not hold a builder's license valid in the state of Texas is not in accordance with the general purposes and objectives of the Declaration.
>
> [Best] is not entitled to the reduced builder's rate of fifty-percent (50%) of the full maintenance charge.

This appeal followed.

## ANALYSIS

### I.   The trial court erred in concluding that a builder must hold a valid Texas license to qualify for reduced annual assessments.

Best raises numerous issues on appeal. In all but one issue, Best challenges the trial court's determination that he was not entitled to the reduced builder's rate of annual maintenance assessments. In sum, Best argues that the trial court erred when it admitted parol evidence to create an ambiguity in the covenants and then erred again when it concluded that he did not qualify for the reduced builder's rate because he did not possess a valid Texas builder's license. We address these issues together.

#### A.   Standard of review and applicable law

When construing restrictive covenants such as those at issue here, appellate courts apply general rules of contract construction. *See Tanglewood Homes Ass'n v. Feldman*, 436 S.W.3d 48, 66 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). In construing a written contract, an appellate court's primary goal is to ascertain the

4

true intentions of the parties as expressed in the instrument. *Hernandez v. Abraham, Watkins, Nichols, Sorrels & Friend*, 451 S.W.3d 58, 72 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). We examine the restrictive covenants as a whole in light of the circumstances present when they were written, affording words and phrases their plain, ordinary, and generally accepted meanings unless the instrument itself shows them to be used in a technical or different sense. *Id.*; *Tanglewood Homes Ass'n*, 436 S.W.3d at 66. We construe contracts from a utilitarian standpoint, bearing in mind the particular business activity sought to be served, and we avoid, when possible and proper, a construction that is unreasonable, inequitable, or oppressive. *Hernandez*, 451 S.W.3d at 72. Courts are not authorized to rewrite agreements to insert provisions parties could have included or to imply terms for which they have not bargained. *Id.* In other words, courts cannot make contracts for the parties. *Id.*

Whether a contract is ambiguous is a question of law for the court to decide by examining the agreement as a whole in light of the circumstances present when the contract was entered. *Lane-Valente Indus. (Nat'l), Inc. v. J.P. Morgan Chase Bank, N.A.*, 468 S.W.3d 200, 205 (Tex. App.—Houston [14th Dist.] 2015, no pet.). A contract is unambiguous if it can be given one certain or definite legal interpretation. *Id.* The fact that the parties disagree about a contract's meaning does not necessarily show that it is ambiguous. *Id.* In addition, parol evidence is not admissible for the purpose of creating an ambiguity. *Material Partnerships, Inc. v. Ventura*, 102 S.W.3d 252, 258 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). If a contract is not ambiguous, the court will construe it as a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003); *see Owens v. Ousey*, 241 S.W.3d 124, 129 (Tex. App.—Austin 2007, pet. denied) ("like other

questions of law, we review a trial court's construction of restrictive covenants de novo.").

We review a trial court's conclusions of law de novo. *Trelltex, Inc. v. Intecx, L.L.C.*, 494 S.W.3d 781, 790 (Tex. App.—Houston [14th Dist.] 2016, no pet.). When performing a de novo review, we exercise our own judgment and redetermine each legal issue. *Id.* To make this determination, we consider whether the conclusions are correct based on the facts from which they are drawn. *Id.*

## B. The trial court applied the wrong definition of "builder."

Best argues on appeal that the trial court erred in concluding that the provisions of the covenants regarding reduced assessments for builders, quoted above, are ambiguous. The trial court did not expressly address in its findings of fact and conclusions of law whether the term "builder" as used in the covenants is ambiguous. Thus, it is unclear whether the trial court concluded the term was unambiguous and determined its meaning as a matter of law, or concluded it was ambiguous and then found that to qualify as a "builder" under Falcon Rock's covenants, a person or entity must possess a Texas builder's license. Regardless of the route the trial court took, we conclude that the term "builder" is not ambiguous. We therefore treat the trial court's determination as a conclusion of law,[3] review it de novo, and hold that the term "builder" does not require licensure.[4]

---

[3] *See In re Office of Att'y Gen. of Tex.*, 264 S.W.3d 800, 804 n.3 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

[4] Falcon Rock did not respond in its brief to Best's arguments regarding the trial court's definition of builder and its impact on the amount of assessments Best owed. Falcon Rock instead argued that Best judicially or quasi-judicially admitted the amount of past-due assessments he owed during his trial testimony. We have reviewed Best's testimony cited by Falcon Rock and we conclude that it does not rise to the level of a judicial admission or a quasi-admission. *See Hennigan v. I. P. Petroleum Co., Inc.*, 858 S.W.2d 371, 372 (Tex. 1993) (explaining difference between judicial admissions and quasi-admissions, which are a party's testimonial declarations contrary to that party's prior position, and requirements for quasi-admissions to be treated as

6

"Builder" is not a term defined within the covenants. In this situation, the term must be afforded its plain, ordinary, and generally accepted meaning while reading it in context and in light of the rules of grammar and common sense. *RSUI Indem. Co. v. Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015). "Builder" is defined as "[o]ne whose occupation is the building or erection of structures, the controlling and directing of construction, or the planning, constructing, remodeling and adapting to particular uses of buildings and other structures . . . ." *Black's Law Dictionary* 194 (6th ed. 1990).[5]

When determining a term's meaning, we also may consider the circumstances present at the time Falcon Rock's covenants were adopted in 2004. *See Lane-Valente Indus. (Nat'l), Inc.*, 468 S.W.3d at 205; *Tanglewood Homes Ass'n*, 436 S.W.3d at 66. The Texas Legislature passed the Texas Residential Construction Commission Act (TRCCA) in 2003.[6] *See* Act of June 20, 2003, 78th Leg., R.S., ch. 458, § 1.01, sec. 401.003, 2003 Tex. Gen. Laws 1703 (expired Sept. 1, 2009). The TRCCA defined the word "builder" as a "person who, for a fixed price, commission, fee, wage, or other compensation, sells, constructs or supervises or manages the construction of . . . a new home [or] material improvement to a home . . . ." *Id.* sec. 401.003, 2003 Tex. Gen. Laws at 1704. These dictionary and statutory definitions

---

judicial admissions). At most, Best admitted the maximum amount of maintenance charges assessed against the lot during the relevant years before applying the 50% rate he contended he should have received as a builder.

[5] *See also New Oxford American Dictionary* 228 (3d ed. 2010) (defining "builder" as "a person whose job is to construct or repair houses, or to contract for their construction and repair").

[6] The TRCCA created the Texas Residential Construction Commission and gave the Commission the rule-making authority to regulate residential builders and establish a regimen for alternative dispute resolution of disputes between builders and homeowners. *See Maroney v. Chip Buerger Custom Homes, Inc.*, No. 03-17-00355-CV, 2018 WL 3041087, at *6 n.2 (Tex. App.—Austin June 20, 2018, pet. filed) (mem. op.) Ultimately, the Legislature allowed the TRCCA to expire as of September 1, 2009. *See id.*

are similar, and neither includes a licensing requirement to be considered a builder.

Before the TRCCA expired, it did require that a person hold a certificate of registration to "act as a builder" in Texas. *See id.* sec. 416.001, 2003 Tex. Gen. Laws at 1709. But the TRCCA also defined builder separately from—and without reference to—this registration requirement, confirming that a person could meet the statutory definition of builder quoted above without registering. Nor does anything in the covenants indicate that registration is a prerequisite to being a builder. The covenants do not require a builder to take action to build a residence within a particular period of time to be entitled to reduced assessments.

Moreover, Texas stopped registering builders when the TRCCA expired in September 2009—only three months after Best purchased the vacant lot in Falcon Rock. *See Maroney*, 2018 WL 3041087, at *6 n.2. Thus, for almost all of the period at issue, it was legally impossible for Best to meet the trial court's definition of builder. It defies common sense to define the term builder to include a licensure requirement that legally does not exist in Texas. *See Garofolo v. Ocwen Loan Servicing, L.L.C.*, 497 S.W.3d 474, 481–82 (Tex. 2016) (applying common usage and common sense to define contractual meaning of "correct"); *Frost Nat. Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (stating that when construing contracts, courts "will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive."); *American Honda Motor Co. v. Texas Dep't of Transp.-Motor Vehicle Div.*, 47 S.W.3d 614, 621 (Tex. App.—Austin 2001, pet. denied) ("The general rule is that when such law is repealed without a saving clause, it is considered, except as to transactions past and closed, as though it had never existed." (internal quotation marks omitted)).

Courts are not authorized to rewrite agreements or to add provisions or terms that the parties could have included but, for whatever reason, did not. *Hernandez*,

451 S.W.3d at 72. To adopt the trial court's definition of builder would require this court to insert an additional word—licensed—into the section providing a reduced rate for builders. This we cannot do. *See SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005) ("The intent of a contract is not changed simply because the circumstances do not precisely match the scenarios anticipated by the contract."); *HECI Exploration Co. v. Neel*, 982 S.W.3d 881, 888 (Tex. 1998) (Stating that courts "cannot make contracts for the parties."); *Provident Fire Ins. Co. v. Ashy*, 162 S.W.2d 684, 687 (Tex. 1942) ("Parties make their own contracts, and it is not within the province of this court to vary their terms in order to protect them from their own oversights and failures . . . ." (internal quotation marks omitted)).

We note that the trial court based its definition of builder in part on Article IX, Section 4 of the covenants. According to that section, if a word in the covenants is "susceptible of more than one or conflicting interpretations, then the interpretation which is most nearly in accordance with the purposes and objectives of [the covenants] shall govern." Because the term "builder" as used in the covenants is not ambiguous, we conclude this section does not inform the meaning of that term.

For these reasons, we hold that the trial court erred when it concluded that to qualify for the reduced builder rate of assessments, Best had to possess a valid Texas builder's license. We further hold that to qualify as a builder under the plain meaning of that term and to be eligible for the reduced builder's rate of assessments, one must be engaged in the occupation of constructing or improving residential structures, or supervising or managing those activities. We sustain Best's first eight issues.

## II. The trial court's error was harmful.

Having held that the trial court used an erroneous definition of "builder," we must determine whether that error probably caused the rendition of an improper

judgment. *See* Tex. R. App. P. 44.1(a)(1). Article IV, Section 3 of Falcon Rock's covenants provides that a builder who owns a vacant lot in the subdivision shall pay a reduced annual assessment. There is some evidence in the record that Best meets the above definition of builder and thus is eligible for the reduced rate of assessments. In addition, the covenants do not create a deadline by which the reduced rate will expire if the builder has not yet built a residential structure. Rather, Section 3 provides that the builder shall pay the reduced assessment "unless and until a residential structure has been built thereon and three (3) months have elapsed since the substantial completion of such residence, or the residence has been permitted to be occupied, whichever occurs first." The trial court did not find that either of these events had occurred, nor is there any evidence to support such a finding.

As the trial court's findings of fact and conclusions of law show, its conclusion that a person must hold a Texas builder's license to be entitled to the reduced builder's rate of assessments is the sole ground supporting its judgment that Falcon Rock is entitled to recover the full amount of the assessments from Best. The trial court's erroneous conclusion regarding the meaning of "builder" was therefore harmful to Best, and the judgment must be reversed. *See Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.) (explaining erroneous conclusion of law requires reversal if controlling findings of fact will not support judgment on correct legal theory).

## III. The proper remedy is to remand for a new trial on all issues.

Best contested his liability to Falcon Rock for any amount of assessments, asserting numerous affirmative defenses in his pleadings. The trial court rejected each of these affirmative defenses in its findings of fact and conclusions of law. Because Best contested liability at trial, we must remand for a new trial on both liability and damages. *See* Tex. R. App. P. 44.1(b) ("The court may not order a

10

separate trial solely on unliquidated damages if liability is contested."); *Estrada v. Dillon*, 44 S.W.3d 558, 562 (Tex. 2001) (per curiam).

## CONCLUSION

Having sustained Best's first eight issues on appeal, we reverse the trial court's judgment and remand this case for further proceedings.[7]

/s/     J. Brett Busby
         Justice

Panel consists of Chief Justice Frost and Justices Busby and Wise.

---

[7] Because we have reversed the trial court's judgment and remanded for a new trial, we need not reach Best's ninth issue in which he challenges the sufficiency of the evidence supporting the trial court's "finding of builder," and his tenth issue in which he challenges the trial court's award of post-judgment interest in the final judgment. *See* Tex. R. App. P. 47.1.