**Affirmed and Memorandum Opinion filed February 8, 2022.**



In The

# 𝔉𝔬𝔲𝔯𝔱𝔢𝔢𝔫𝔱𝔥 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## NO. 14-20-00608-CV

## IN THE INTEREST OF Y.E. AND L.E., MINOR CHILDREN

**On Appeal from the 247th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2017-23093**

## MEMORANDUM  OPINION

Appellant Abdulrahman Elyoussef appeals from the trial court's order denying his petition to modify the amount of child support that he had agreed he would pay his former spouse, appellee Nour Barbarawi, in an Agreed Final Decree of Divorce ("Agreed Divorce Decree").  Because Elyoussef has not established that the trial court abused its discretion when it denied his request to reduce his child support obligation, we overrule his issues on appeal and affirm the trial court's order.

## BACKGROUND

Elyoussef and Barbarawi's marriage ended in 2018 when the trial court signed the Agreed Divorce Decree. It is undisputed that during the marriage, Elyoussef started a successful flooring business in Tomball. Elyoussef agreed that he would pay $2,000 child support for his two young children each month. Elyoussef additionally agreed to provide health insurance for his children. In addition to payments related to his children, Elyoussef agreed to make monthly payments to pay off the almost $6,000 balance owing on a credit card in Barbarawi's name that had been used for the flooring business. Finally, Elyoussef agreed to pay Barbarawi $50,000 to compensate her for her community interest in the flooring business, which would be paid at the rate of $1,500.00 per month.

Elyoussef quickly fell behind in his child support payments. The trial court eventually held Elyoussef in contempt for failure to pay that obligation. At the time the trial court signed the contempt order, it found that Elyoussef owed $13,200 in unpaid child support. It also found that Elyoussef had ceased making the other payments required by the Agreed Divorce Decree.

Three days after the contempt hearing, Elyoussef filed an Original Petition to Modify Parent-Child Relationship seeking a reduction in the amount of his monthly child-support obligation. Elyoussef alleged that there had been a substantial change in the circumstances of a child or a person affected by the Agreed Divorce Decree. Elyoussef's modification request went to trial before the bench.

At the time of the modification trial, the children were three and six years of age. The youngest child had medical issues related to late development and was enrolled in a special needs program at her school. The child also received speech and occupational therapy. The youngest child is also enrolled in a gymnastics

2

program as a substitute for additional occupational therapy. According to Barbarawi, the oldest child is gifted and talented, participates in gymnastics, but Barbarawi had been forced to cancel the child's involvement in extra language classes, ballet lessons, and soccer when Elyoussef stopped making his child-support payments. Barbarawi believed it was in her children's best interest to participate in these activities.

During the trial, Elyoussef admitted that he had not made all the child-support payments required by the Agreed Divorce Decree. Elyoussef asserted that he ceased making the required payments because his flooring business had failed and he did not have any money. At the time of the modification trial, Elyoussef was living with his mother in a house owned by a brother. Elyoussef admitted he did not pay anything for living in his mother's house.

Elyoussef testified that he had been in the flooring business since 2007. After he married Barbarawi, Elyoussef opened Prime Floors, LP with a business partner. Elyoussef eventually bought out his partner making him the sole owner of Prime Floors. Elyoussef admitted that he made as much as $120,000 a year while married. Barbarawi however, testified that Elyoussef made more than $150,000 per year during the marriage because numerous expenses, including groceries, vacations, and gas, were paid for using cash from Prime Floors' business. A business valuation performed at the time of the original divorce proceeding valued Prime Floors at $635,000.

Elyoussef testified that he walked away from his flooring business. Elyoussef gave various reasons for his abandonment of what had been a thriving business generating close to two million dollars in annual revenue. He testified the business failure resulted (1) from an inability "to keep up with the bills and [the business] had a lot of repairs," (2) when the business lost three of its largest clients,

(3) from the business being evicted from the premises, and (4) because the business had three loans with high interest. Elyoussef admitted that he had no documents establishing an eviction, that he took nothing from the premises when he left, and that a friend took over the business which was located in a building that had been the location of a Tomball flooring business for over forty years. The evidence established that Elyoussef received nothing in return for his abandonment of his flooring business. Barbarawi also testified that the new owner of the flooring business is a friend of Elyoussef.

Elyoussef introduced various bank records during the trial. These included bank statements for Prime Floors from 2018 through March 2019. They also included bank statements for the months of August through December 2019 for Y & L Construction, LLC. Elyoussef testified that he set up this company and bank account to accept payments from Today's Sales, a company he worked for after he walked away from Prime Floors.[1] Finally, he introduced bank statements from his own Chase bank account for the months of July 2019 through June 8, 2020. According to Elyoussef, these records support his contention that his income went down to "almost nothing actually."

At no point during the bench trial did Elyoussef testify or offer any documentary evidence on his current income. While Elyoussef did testify that his income went down to almost nothing, he also admitted that while working for Empire Flooring, he earned "3 to 3500 bucks for that three month [sic]" between

---

[1] Elyoussef actually testified that he set up a company called Wide Open Construction. The bank records are for Y & L Construction. There is no direct evidence connecting Wide Open Constriction with Y & L Construction LLC. However, while being questioned about the Y & L Construction bank accounts, Elyoussef testified that he set up the account for Wide Open Construction to accept payments from Today's Sales.

July and October 2019.[2]  In addition, the Y & L Construction bank records reveal that Elyoussef earned $4,208.96 in August 2019 and $4,748.85 in September 2019, a total of $8,957.81 for two months' work.  Despite this income, Elyoussef paid child support and arrearages totaling $875.00 in August 2019 and $75 in September 2019.

Elyoussef also testified that he occasionally drove for Uber.  In support of that assertion, Elyoussef produced records from Uber for February, March, and April of an unspecified year.  The records indicate the number of trips he completed, the amount of time he was online seeking trips, his acceptance rate for trips, and the amount he earned for each week.  Elyoussef earned a total of $682.82 during that three-month period driving for Uber.  Elyoussef explained that he was let go by Uber because he did not have insurance, which he claimed he could no longer afford to keep on his vehicle, a Toyota Sequoia.

Elyoussef also testified about his car loan on the Sequoia.  Elyoussef admitted that he was behind on his car payments to Toyota.  He also testified that some months he chose to make payments on his vehicle loan rather than pay his child-support obligation because he needed a car.  Elyoussef admitted that he had not made any car payments since March 2019.  Despite not making any payments, Elyoussef testified that he continued to drive the Sequoia, but when he was not driving it, he hid it at a friend's house.

Elyoussef admitted that he has access to other financial resources.  In one instance in February 2019, Elyoussef paid $1,100 to Toyota Financial on his Sequoia loan, but he mistakenly paid it from Barbarawi's account.  Elyoussef obtained enough cash from his brother to almost immediately reimburse

---

[2] Empire Flooring is also known as Today's Sales.

5

Barbarawi's account. In addition, when the trial court held Elyoussef in contempt in July 2019 for failing to pay his child-support obligation, Elyoussef paid $1,000 to avoid being jailed immediately. He then made another payment of $2,000, which his brother provided, one day before the entry of the contempt order with the suspended commitment.

The trial court denied Elyoussef's motion to modify in its entirety. Elyoussef requested that the trial court prepare findings of fact and conclusions of law and then filed a past-due notice. Barbarawi subsequently filed proposed findings of fact and conclusions of law. The trial court eventually signed findings of fact and conclusions of law. Among other findings, the trial court found that Elyoussef (1) "was not a credible witness;" (2) "did not demonstrate a material and substantial change of circumstances for a party or child that would justify the requested reduction in child support;" and (3) "did not demonstrate that the requested modification would be in the children's best interest." The trial court then concluded that "there has been no material and substantial change of circumstances since the prior order" and "the requested modification is not in the children's best interest." Elyoussef did not file a request for additional or amended findings of fact and conclusions of law pursuant to Rule 298 of the Texas Rules of Civil Procedure. This appeal followed.

## ANALYSIS

Elyoussef lists six issues in his brief. Elyoussef does not, however, organize the argument section according to those six issues. Instead, he raises numerous arguments on appeal only loosely connected to his list of issues. Therefore, to more efficiently address Elyoussef's arguments, we group them by subject and address them accordingly.

## I. Standard of review and applicable law

6

The Texas Family Code allows a trial court to modify a child-support order "if the circumstances of the child or a person affected by the order have materially and substantially changed since the date of the order's rendition." *See* Tex. Fam. Code § 156.401(a-1). A change in a parent's income can constitute a material and substantial change warranting a change in the amount of child support a parent is required to pay. *Reagins v. Walker*, 524 S.W.3d 757, 761 (Tex. App.—Houston [14th Dist.] 2017, no pet.). In determining whether a modification of child-support payments is appropriate, a trial court should consider the circumstances of the child and the parents at the time of the prior child-support order as compared to the circumstances existing at the time of the trial of the modification suit. *In re K.A.M.S.*, 583 S.W.3d 335, 346 (Tex. App.—Houston [14th Dist.] 2019, no pet.). The trial court may consider the child-support guidelines. *Id.* (citing Tex. Fam. Code § 156.402(a)). It may also consider other relevant evidence. *Id.* (citing Tex. Fam. Code § 156.402(b)). The trial court's consideration of the child-support guidelines in a modification proceeding is discretionary, not mandatory. Tex. Fam. Code § 156.402(a); *In re K.A.M.S.*, 583 S.W.3d at 346. In addition, the best interest of the child should be the trial court's primary consideration in deciding whether to modify a child-support obligation. *See* Tex. Fam. Code § 156.402(a); *In re K.A.M.S.*, 583 S.W.3d at 346.

Because a trial court possesses broad discretion in determining whether to modify a child-support order, a reviewing court will not disturb the trial court's determination absent a clear abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *In re K.A.M.S.*, 583 S.W.3d at 346. An abuse of discretion only occurs when the trial court acts without reference to any guiding rules or legal principles. *Worford*, 801 S.W.2d at 109; *see also Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). Under the

7

abuse of discretion standard, the legal and factual sufficiency of the evidence are not to be considered as independent grounds of error, but as relevant factors in assessing whether the trial court did in fact abuse its discretion. *Hardin v. Hardin*, 161 S.W.3d 14, 19 (Tex. App.—Houston [14th Dist.] 2004, no pet.). When applying the abuse-of-discretion standard in this context, we ask first whether the trial court had sufficient information on which to exercise its discretion, applying traditional sufficiency review, and if so, whether it acted reasonably in the application of its discretion. *See Reagins*, 524 S.W.3d at 761.

When, like here, a trial court makes specific findings of fact and conclusions of law following a bench trial and a reporter's record is before the appellate court, the findings will be sustained if there is evidence to support them, and the appellate court will review the legal conclusions drawn from the facts found to determine their correctness. *Trelltex, Inc. v. Intecx, L.L.C.*, 494 S.W.3d 781, 789 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Findings of fact have the same force and dignity as a jury's verdict and are reviewable under the same standards of legal and factual sufficiency. *Foley v. Capital One Bank, N.A.*, 383 S.W.3d 644, 646 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

Because the trial court failed to find a material and substantial change of circumstances—an issue on which Elyoussef bore the burden of proof—the evidence is legally insufficient only if it conclusively establishes that there has been such a change. *In re N.H.N.*, 580 S.W.3d 440, 445 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam)). In making this determination, we must view the evidence in the light most favorable to the trial court's actions and indulge every legal presumption in favor of the judgment. *Id.* We also bear in mind that the trial court is the sole judge of the witnesses' credibility and the weight to be given to

the evidence. *Id.* When considering the factual sufficiency of the evidence of a material and substantial change of circumstances, we review the entire record to determine whether the great weight and preponderance of the evidence show that there has been such a change. *Id.*

This Court is not a factfinder. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). Instead, the trier of fact, in this case the trial court, is the sole judge of the credibility of the witnesses and the weight to afford their testimony. *GTE Mobilnet of South Texas L.P. v. Pascouet*, 61 S.W.3d 599, 615–16 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). Therefore, we may not pass upon the witnesses' credibility or substitute our judgment for that of the trial court, even if the evidence would support a different result. *Id.* If we determine that the evidence is factually insufficient, we must detail the evidence relevant to the issue and state in what regard the contrary evidence greatly outweighs the evidence in support of the challenged finding; we need not do so when we affirm. *See Gonzalez v. McAllen Med. Ctr., Inc.*, 195 S.W.3d 680, 681 (Tex. 2006) (per curiam).

We review a trial court's conclusions of law de novo. *Trelltex, Inc.*, 494 S.W.3d at 790. When performing a de novo review, we exercise our own judgment and redetermine each legal issue. *Id.* To make this determination, we consider whether the conclusions are correct based on the facts from which they are drawn. *Id.*

## II.    The trial court made findings of fact and conclusions of law.

Elyoussef initially argues that the trial court failed to make findings of fact and conclusions of law after he had timely requested them as required by the Texas Rules of Civil Procedure. Having examined the appellate record, we disagree.

9

As summarized above, the trial court made findings of fact and conclusions of law in response to Elyoussef's request. To the extent Elyoussef is complaining that the trial court's findings were late pursuant to the twenty-day deadline found in Rule 297, we once again disagree. *See* Tex. R. Civ. P. 297 (providing that a trial court "shall file its findings of fact and conclusions of law within twenty days after a timely request is filed"). The Supreme Court of Texas has made it clear that trial courts may file findings and conclusions beyond the deadline provided in the Rules. *See Ad Villarai, LLC v. Chan II Pak*, 519 S.W.3d 132, 141, n.7 (Tex. 2017) ("While the rules create a deadline for the trial court to file findings, those deadlines do not bar late findings."). As the supreme court explained, the deadline under the Rules for a trial court to make findings "marks the point after which the party requesting findings may assert appealable error." *Id.* Elyoussef asserts that the trial court's deadline to make findings was September 7, 2020. Assuming that is true, the trial court signed its findings and conclusions a week later on September 15, 2020. Elyoussef has not pointed out how he was harmed by this one week delay. *See Nachtman v. Carey*, No. 14-98-00148-CV, 1999 WL 976440, at *2 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (op., not designated for publication) (citing *Robles v. Robles*, 965 S.W.2d 605, 610 (Tex. App.—Houston [1st Dist.] 1998, pet. denied)) ("Unless the appellant can show injury, there is no remedy if a trial court files untimely findings and conclusions.").

Elyoussef also appears to argue that the trial court's findings and conclusions were deficient because they were insufficiently specific and did not include any "evidentiary basis" for the trial court's denial of his request to reduce his child support obligation, nor findings related to Barbarawi's intentional underemployment or unemployment contentions. Rule 298 provides a party a remedy when it believes a trial court's findings are inadequate to support its

10

judgment. This rule allows a party to make "a request for specified additional or amended findings or conclusions." Tex. R. Civ. P. 298. "The failure to request additional findings of fact and conclusions of law constitutes a waiver on appeal of the trial court's lack of such findings and conclusions." *Robles*, 965 S.W.2d at 611. Here, Elyoussef did not request that the trial court make additional findings or conclusions. As a result, he has waived any complaint about the adequacy of the trial court's findings and conclusions.

Finally, even if Elyoussef had preserved his complaints about the adequacy of the trial court's findings and conclusions, we conclude he has not shown error by the trial court, nor that he was harmed. Elyoussef asserts on appeal that he is left to guess about the basis of the trial court's ruling because the trial court did not make findings setting out the specific evidentiary basis for its judgment nor on Barbarawi's intentional unemployment or underemployment allegation. Elyoussef, however, was not entitled to findings on every controverted fact. *Zhang v. Capital Plastic & Bags, Inc.*, 587 S.W.3d 82, 89 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). Indeed, "a trial court is not required to make additional findings of fact and conclusions of law that are unsupported in the record, evidentiary, or contrary to other previous findings." *Aaron v. Aaron*, No. 14-10-00765-CV, 2012 WL 273766, at *9 (Tex. App.—Houston [14th Dist.] Jan. 31, 2012, no pet.) (mem. op.). Instead, a trial court is required to "make additional findings of fact only if they have some legal significance to an ultimate issue in the case." *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 255 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). We conclude that the trial court did that in its original findings when it found that Elyoussef did not demonstrate (1) "a material and substantial change of circumstance for a party or child of the marriage that would justify the requested reduction in child support;" and (2) "that the requested

modification would be in the children's best interest."

Elyoussef was also not harmed by the trial court's alleged failure to make a finding on Barbarawi's intentional unemployment/underemployment allegation. Because such a finding is mandatory only if the trial court bases its decision on intentional unemployment or underemployment, we conclude that because the trial court made no such finding, it establishes that the trial court rejected the allegation. *See Iliff v. Iliff*, 339 S.W.3d 74, 82 (Tex. 2011) ("To facilitate appellate review and to encourage consistency in the exercise of this discretion across the state, the trial court must make a finding of intentional unemployment or underemployment and its decision to base child support on earnings potential rather than actual earnings must be supported by the record.").

## III. Sufficient evidence supports the trial court's denial of Elyoussef's petition to reduce his child-support obligation.

Elyoussef makes several arguments that the trial court abused its discretion when it denied his petition to reduce his child-support obligation because there was insufficient evidence to support the trial court's denial. We address each argument in turn.

### A. The trial court's credibility determination.

Elyoussef initially argues that the trial court's finding that he was not a credible witness was insufficient by itself to support the trial court's denial. Elyoussef recognizes that the trial court was authorized to make that determination and he does not argue on appeal that it should be overturned. Instead, he argues that the credibility determination should not act as a complete bar to relief because the other evidence "irrefutably demonstrate[d] a material and substantial change of circumstances." Elyoussef then compares the evidence in his case with the evidence presented in a prior case appealed to this court, *Friermood v. Friermood*,

25 S.W.3d 758, 760 (Tex. App.—Houston [14th Dist.] 2000, no pet.). According to Elyoussef, the trial court also found that the appellant in *Friermood* was not a credible witness, but still ordered a reduction in his child support payments. He suggests this court should do the same thing here.

We do not consider the trial court's credibility finding in isolation. Instead, this finding shapes the way we view the evidence, the weight to be given to that evidence, and the resolution of any conflicts in the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819, 822 (Tex. 2005). In addition, the fact that a different trial court, in the exercise of its discretion, decided to reduce the amount of child support despite the petitioner submitting unreliable evidence in support of his request, does not mean every trial court faced with a possibly similar factual scenario must do the same. We overrule this argument.

B. **The trial court was not required to follow the child-support guidelines in this modification proceeding.**

Next, Elyoussef argues that the trial court abused its discretion when it denied his request to modify the amount of his child-support obligation because, in his view, the trial court did not follow the child-support guidelines and the guidelines should govern the proceeding. We disagree because the legislature has made it clear that the child-support guidelines are discretionary in a modification proceeding. *See* Tex. Fam. Code § 156.402(a) ("The court may consider the child support guidelines for single and multiple families under Chapter 154 to determine whether there has been a material or substantial change of circumstances under this chapter that warrants a modification of an existing child support order if the modification is in the best interest of the child."). Therefore, the trial court committed no abuse of discretion if it chose not to follow the child-support guidelines in resolving Elyoussef's petition. *See Friermood*, 25 S.W.3d at 760

13

("As stated, the court's adherence to the guidelines is only discretionary.").

### C. Sufficient evidence supports the trial court's denial of Elyoussef's petition to modify his child-support obligation.

Finally, Elyoussef argues that the trial court abused its discretion when it denied his petition to reduce his child-support obligation because "the record supports a material change in circumstances." More specifically, he asserts that his "change in living situation, employment and employability, were discussed in detail and supported by the record." We disagree that Elyoussef has shown that he met his burden of proof to obtain a modification.

Where, as here, the order that is sought to be modified is an agreed order that does not comport with child-support guidelines, the trial court may modify the order "only if the circumstances of the child or a person affected by the order have materially and substantially changed since the date of the order's rendition." Tex. Fam. Code § 156.401(a-1). In addition, the best interest of the child should remain the trial court's primary consideration in deciding whether to modify a child-support obligation. *Reagins*, 524 S.W.3d at 761. The party requesting the modification bears the burden to show such a change in circumstances. *See In re N.H.N.*, 580 S.W.3d at 445.

Elyoussef argues this issue as if the evidence in the record was undisputed regarding his changed financial circumstances. Elyoussef also ignores the trial court's findings that he was not a credible witness, and his "testimony was unclear and often contradictory." Instead, while Elyoussef testified that his income was much reduced from the point in time when the original divorce decree was signed, we must presume that the trial court, based on Elyoussef's lack of credibility and contradictory testimony, disbelieved that evidence. *See id.* at 446. ("Although Father offered evidence that his expenses increased and his earnings decreased

14

after the order respecting child support was last modified in 2014, the trial court apparently did not find Father's evidence credible."). For example, with respect to the bank records Elyoussef introduced into evidence, the trial court could have taken into account the fact that only one of the accounts was Elyoussef's personal account. It could also have considered the testimony by both Elyoussef and Barbarwai, that they frequently relied on cash transactions to pay for their daily living expenses and thus concluded the bank records failed to accurately tell the complete story of Elyoussef's financial situation. In addition, the trial court could have disbelieved Elyoussef's testimony that he simply walked away from his flooring business and allowed a friend to take it over. *See id.* ("The trial court presumably disbelieved Father's evidence that he gave away the company and has a reduced income."). The evidence that Elyoussef was able to quickly obtain significant sums of money when he needed it, also supports the determination that Elyoussef's financial situation had not materially and substantially changed. We conclude that, on this record, and taking into account the trial court's credibility finding, Elyoussef has failed to show that the trial court clearly abused its discretion when it found that he failed to demonstrate a material and substantial change of circumstances as required by the section 156.401(a-1) of the Texas Family Code.

Turning to the best interest of the child requirement, Elyoussef did testify that he felt a reduction of his child-support obligation was in the children's best interest. The trial court, however, could have disbelieved that testimony and instead believed Barbarawi's testimony that a reduction in child support was not in the children's best interest. Barbarawi testified that the youngest child had medical issues related to late development and was enrolled in a special needs program at her school. Barbarawi also testified that the oldest child is gifted and talented and

15

she participates in gymnastics, but Barbarawi had been forced to cancel her involvement in other activities when Elyoussef stopped making his child support payments. According to Barbarawi, both children would be negatively affected by a reduction in child-support payments because participation in these activities was in their best interest. The trial court presumably believed this testimony and disbelieved Elyoussef's. As a result, because there is evidence supporting the trial court's decision, we hold that the trial court did not abuse its discretion when it found that Elyoussef failed to demonstrate that the requested child-support modification would be in the children's best interest.

We overrule Elyoussef's sufficiency challenges to the trial court's denial of his petition to modify his child-support obligation.

## IV. The trial court did not abuse its discretion when it admitted the valuation report on Elyoussef's flooring business.

Elyoussef also argues that the trial court abused its discretion when it admitted the report valuing Prime Floors at $635,000. When Barbarawi sought to admit the report, Elyoussef objected that the report was hearsay and was not relevant because it was prepared during the original divorce proceeding. The trial court initially sustained Elyoussef's objection. Barbawai then responded to Elyoussef's objections by explaining (1) the report's relevance to Barbarawi's intentional underemployment and unemployment allegations; and (2) that it was filed as a business record and therefore fit within an exception to the hearsay rule. At that point, the trial court asked Eloussef to clarify his objections and he once again asserted the records were not relevant because they pre-dated the modification proceeding and were hearsay. The trial court then changed its ruling, overruled Elyoussef's objections, and admitted the report into evidence.

The decision to admit or exclude evidence lies within the sound discretion of

the trial court. *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007). A trial court exceeds its discretion if it acts in an arbitrary or unreasonable manner or without reference to guiding rules or principles. *Barnhart v. Morales*, 459 S.W.3d 733, 742 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002)). When reviewing matters committed to the trial court's discretion, a reviewing court may not substitute its own judgment for that of the trial court. *Id.* Thus, the question is not whether this court would have admitted the evidence. Rather, an appellate court will uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling, even if that ground was not raised in the trial court. *Id.* Therefore, we examine all bases for the trial court's decision that are suggested by the record or urged by the parties. *Id.*

A party seeking to reverse a judgment based on evidentiary error must prove that the error probably resulted in rendition of an improper judgment, which usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted. *Id.* To determine whether evidentiary error probably resulted in the rendition of an improper judgment, an appellate court reviews the entire record. *Id.* (citing *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001)).

Assuming without deciding that the trial court erred when it overruled Elyoussef's objections, we conclude he has not shown that the error was reversible because the judgment did not turn on this one piece of evidence. While Barbarawi did allege that Elyoussef was intentionally unemployed or underemployed to avoid paying his child support obligation and she sought to admit the report to prove that allegation, the trial court did not make a finding on that basis in its Findings of Fact and Conclusions of Law. Because Barbarawi requested that the trial court make

17

such a finding, and such a finding is mandatory if the trial court bases its decision on intentional unemployment or underemployment, we conclude the trial court rejected that allegation. *See Iliff*, 339 S.W.3d at 82 (requiring trial court to make express finding of intentional unemployment or underemployment if it bases child support on earnings potential rather than actual earnings); *Vickery*, 5 S.W.3d at 253 ("In other words, where the trial court has been specifically requested to make a particular finding in support of its judgment and it fails to do so, the failure is tantamount to a refusal."). As a result, we conclude that the judgment did not turn on the erroneous admission of the business report and Elyoussef was not harmed by its admission. We therefore overrule Elyoussef's evidentiary issue.

## CONCLUSION

Having addressed and overruled all arguments Elyoussef raised in this appeal, we affirm the trial court's order denying his petition to modify his child support obligation.

/s/    Jerry Zimmerer
       Justice

Panel consists of Chief Justice Christopher and Justices Zimmerer and Wilson.